CHIEF JUSTICE LINDSAY
delivered the opinion on the court.
In the case of the Kentucky River Navigation Company v. *437 Commonwealth, decided by this court March 9, 1876, and reported in 12 Bush, page 8, the only question presented was, whether the company had forfeited its rights under the lease of August 26, 1869, on account of its failure to proceed with reasonable diligence and dispatch to complete the nine locks and dams agreed to be constructed, in addition to the improvements theretofore made by the state. The condition of forfeiture relied on by the Commonwealth was to the effect that if the lessees should fail for sixty days after the award of the lease to commence in good faith the extension of slack-water navigation on the Kentucky River, then the lease should be void. It was decided that the petition did not aver a failure in good faith to commence the work within the stipulated time, but instead thereof, a failure to prosecute the work with proper diligence after having commenced it, and therefore that the facts alleged did not bring the default complained of within the terms of the condition of forfeiture provided by the 6th section of the act of February 24, 1869. But the court further said, that for such defaults the company was subject to the general laws and to the principles of equity, by which, in such cases, the respective rights of lessors and lessees are to be determined, and that the Commonwealth might no doubt have a rescission of the contract of lease for such reasons and on such conditions as would justify the interposition of a court of equity.
In the subsequent action, commenced on the 28th day of March, 1876, which is now before this court on the appeal of the navigation company, a very different state of facts is presented.
It is averred by the Commonwealth that the company had permitted the improvements leased to and placed in its possession by the state to become and remain out of repair to such an extent that one or more of the locks and dams were in great and imminent danger of being washed out and destroyed, *438 and that it was making no attempt to repair and preserve the. improvements received under the lease, and was hopelessly insolvent and altogether unable to repair and preserve them.
The company by its answer “admits that several of the dams are in danger of destruction, but denies that the danger has resulted from the fault of defendant, and says that the defendant has done its best to avoid said danger and to keep said dams in repair.”
It then says, it “does not know, nor has it sufficient information to form a belief, whether it is insolvent or not, whether it is able to put the dams leased it in repair or not, whether it is able to extend slack-water improvements to the Three Porks or not. It has subscriptions of stock made by the city of Louisville and the counties of "Woodford, Jessamine, Clark, Madison, Estill, and Owsley for $500,000, which it is advised and believes are valid, provided that a city or county can by a vote of its people, under authority of an act of the legislature, make such subscriptions. . . . This defendant believes they are valid, but has not sufficient information to form a belief whether they will be judicially determined to be valid or not.”
This is not a sufficient denial of the direct charge of insolvency. The appellant does not pretend that it is not fully advised of all the facts connected with these alleged subscriptions for stock, and it can not escape the effect of this knowledge by declining to form an opinion as to whether, as matter of law, cities and counties can make such subscriptions, or as to whether they will be judicially determined to be valid. The provision of the Civil Code of Practice tolerating such pleading does not and can not be made to apply to questions of law. The Commonwealth’s demurrer to this portion of the answer of appellant should have been entertained.
Appellant received possession from the state of all the *439 slack-water improvements on the Kentucky River. The act under the authority of which the lease was made provides, that “the lessees shall keep said locks and dams in good repair at their own expense.” (Sec. 2, chap. 1580, vol. 1, Sess. Acts 1869.)
It is admitted in this case that these locks and dams are out of repair, and that several of the dams are in danger of destruction; and it is not denied that the company is insolvent and unable to comply with the material provision, just quoted, of the act in virtue of which the possession is held. Hence the question to be decided here is, whether this state of facts authorized the court below to declare that the lease had determined, and that the officers and agents of the Commonwealth were entitled to resume the possession and control of the leased property ?
"While it may be conceded that the controlling purpose of the legislature, in directing the Kentucky River improvements to be leased, was to secure the completion of slack-water navigation to the Three Forks, yet it is manifest the repair and preservation of the existing improvements constituted also a material, and, to the general public, a more important consideration than the extension itself. And we may assume it was in this view the act provided that the lessees should keep the existing locks and dams in good repair at their own expense.
If the company was solvent and able to perform its covenant to repair, and the character of the necessary repairs could be ascertained with a reasonable degree of certainty, a court of equity would decree specific execution of • the contract. In general, a covenant to repair or build will not be specifically enforced against a lessee at the suit of the lessor; but to this general rule there are recognized and indispensable exceptions.
We have here a case in which an action at law for the breach of the covenant to repair, would be an inadequate remedy to the lessor, considered as the mere owner or propri *440 etor of the leased property, in view of the uncertainty of any estimate of damages that could possibly be made, and no remedy at all for the injury to the public resulting from the loss of the navigation of the river. In such a case the chancellor may well interfere to prevent irreparable mischief, and his right to interfere by injunction, or other appropriate equitable remedy, is recognized by Mr. Justice Story, in his work on Equity Jurisprudence (vol. 1, secs. 720 and 721), and by Taylor on Landlord and Tenant (sec. 685.) •
Covenants to build were especially enforced in the cases of Storer v. The Great Western R. Co. (2 Y. & Coll. 48), and Stuyvesant v. the Mayor, &c. (11 Paige, 414). It is true these cases did not arise out of controversies between lessors and lessees, but the principles on which they rest are clearly applicable to contracts of leasing.
If the Commonwealth _ had asked the alternative relief, either to have the covenant to repair specifically enforced, or the contract rescinded, it would not have been a sufficient answer for the company to have set up its insolvency and utter inability to perform its contract. Its pecuniary misfortunes can not be allowed to defeat the extension of slack-water improvements, and also to entail irreparable injury upon the Commonwealth; and as the appellee can neither have specific performance ñor compensation for the breach of the contract, it must have rescission, or be left without any remedy at all.
Forfeitures of leases are not favored, and are not to be implied, except' in very extraordinary cases. Generally the lessor must be content with compensation, even when the contract makes express provision for re-entry on default of the tenant. But there are extreme cases in which equity may decree rescission, although the act or omission does not fall within any express condition of forfeiture. (Claffin v. Scott, 7 Rob. La. Reports, 205.)
The ease under consideration is an extreme one. The *441 lessee, it is true, is not chargeable with willful or intentional breach of contract; but its failure to repair, and its admitted insolvency, not only defeat all the contemplated objects of the lease, but are also about to result in the most ruinous consequences to the lessor and the general public. The character of the leased property, its uses to the public, the purposes of the lease, and the consequences of the admitted default, take this case without the general rule, and fully authorized the chancellor to adjudge that the rights of the lessee had determined, and that it was no longer entitled to retain the possession of the leased property.
It is urged, in opposition to this view, that the 12th section of the act of February 24, 1869, provides a mode by which the state may terminate the contract and resume possession, upon one year’s notice to the lessee, and after ascertaining and paying the full and fair value of the' improvements made under the terms of the lease; and that this statutory remedy, being specific and adequate, must be taken to exclude all others. It is a correct rule of practice, that whenever a statute creates a right, and at the same time prescribes a remedy, that remedy can alone be made available; but the right of the Commonwealth to have this contract rescinded or annulled for equitable reasons does not grow out of or depend upon the statute. It is an incident to all such contracts as that entered into in this case, and the right would .be perfect and complete if the 12th section of the act had been omitted altogether.
The purpose of this 12th section was not to enable the Commonwealth to obtain relief against a defaulting lessee, but to authorize it to terminate the contract, and resume possession of the property in the mode prescribed, without establishing any ground of complaint, or assigning any reason except that it chose, in the exercise of its discretion, to take advantage of this reserved right.
That it might here have pursued this course instead of *442 instituting this action, we do not doubt; but having a right to relief in equity, for the reasons heretofore considered, it was not bound to submit to the delay incident to the remedy provided by the 12th section, and in the meantime take the risk of the destruction of the property imperiled by the failure and inability of the lessee to perform its covenant to repair.'
It is also complained that the court below erred in adjudging the possession to the Commonwealth, without passing upon the claim of the appellant for compensation for the amount of money expended in improving the leased property in excess of the tolls received. It is sufficient to say, this claim was not made the subject of a cross-action; it has not been litigated; and if, under all the circumstances, it presents a ground for relief either at law or in equity, a matter about which we forbear to express an opinion, the judgment here appealed from will interpose no obstacle to its assertion in the future.
Being satisfied that said judgment does not in any way prejudice the substantial rights of the appellant, and that it is fully warranted by the principles of equity practice, it must be affirmed.