## Addison, et al. v. Brandenburg, et al.

(Decided March 28, 1924.)

### Appeal from Lee Circuit Court.

1. Mines and Minerals—Owner Held Entitled to Terminate Lease on Notice and to Retain Coal Thereafter Mined.—Where owner of land entered into verbal lease for no given period, he could terminate it on notice, and, having given notice terminating it, was entitled to hold coal thereafter mined by lessee.

2. Mines and Minerals—Lease Held Not Terminated by Assignment. —A coal lease for a term of two years, with the privilege of extending the same for three years longer, was not forfeited by an assignment under Ky. Stats., section 2292, providing that only such assignments or transfers of a term by a lessee "who has a term of less than two years" shall operate as a forfeiture.

3. Mines and Minerals—Waste Held Not Ground for Forfeiture of Lease.—Ky. Stats., section 2328, only authorizing action for voluntary waste consisting in the commission of some destructive act, and not for mere permissive waste consisting in an omission to keep the property in repair, it cannot be said that anything short of such voluntary waste could be an equitable ground for cancella-

tion or forfeiture of a coal lease, and held that waste, which chiefly grew out of the nonuse of the mine, such nonuse being due to litigation, was not a ground for forfeiture.

4. Equity—Equity Never Favors Forfeiture.—Equity never favors a forfeiture, and will enforce it only in obedience to some strict provision of law or under the strict and literal terms of a contract, and even then. the law or the contract will be strictly construed against the party invoking its provisions and claiming the forfeiture.

O. H. POLLARD and E. C. HYDEN and E. E. HOGG for appellants.

CHESTER GOURLEY and GOURLEY, GOURLEY & PARRISH for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Reversing.

In 1916 and prior thereto, appellee, Jackson Brandenburg, was the owner of a tract of mountainous coal land in Lee county. Through the mountain ran a vein of coal an average of 28 inches in thickness.

In 1916 he entered into a verbal agreement with appellant, Addison, referred to in the evidence as a "verbal lease," whereby Addison was given the right to take coal from a certain part of this tract of land upon specified terms, the tract embraced being five and a fraction acres. . At the time an adjoining part of the land was being mined for coal by another under some contract or agreement with Brandenburg. Addison entered upon his tract and proceeded to mine coal therefrom, and to pay the royalties as agreed upon, and at the same time the other continued to operate on the adjoining leasehold without interference or conflict, they each appearing to acquiesce in a given line between them.

In 1917 Addison made a new entry on his verbal lease which was not a great distance from the line between it and the adjoining lease. Then on the first of January, 1918, while Addison was still operating under his verbal lease, Brandenburg entered into a written contract or lease with Charles Brandenburg and B. L. Young for about 15 acres of the adjoining lease theretofore operated by another. The term of the written lease was for two years from that date with the privilege of five years. The lessor in the lease provided that no other person or persons should operate within the described boundary during the life of the lease.

The lessees under the written lease proceeded to operate thereunder, and Addison under his verbal lease continued to operate through the opening made thereon. The opening made by Addison was at the surface on the verbal lease, but after going a short distance into the hill the course of that entry was turned and eventually went into the territory embraced within the written lease to Brandenburg and Young, and finally the two operations came together. That is, the entry being operated on the written lease and the entry started on the verbal lease came together and caused considerable conflict and confusion as well as inconvenience to both parties. Thereafter Brandenburg and Young, first one and then the other, sold and assigned their interests in the written lease, and one Henry finally became the owner of the whole, and he thereafter on the 23rd of May, 1919, during the first two years of the life of the written lease assigned the same to Addison, whereby he became the owner of the written lease, and was already operating under the verbal lease.

Thereafter Addison continued to operate on both of the leases, but taking out the coal from both through the entry, the mouth of which was on the verbal lease. However, before he became the owner by assignment of the written lease, because of the controversy which had arisen, he again changed the course of the entry which had been driven originally on the verbal lease, and ultimately again went through the line of the two leases back on to the upper end of the verbal lease.

Jackson Brandenburg had also leased other parts of this coal land, on the other side of the mountain, to one Price, and to Durbin & Rader, and those parties were working entries from the other side of the mountain. Accordingly when Addison through his entry on the verbal lease came back into same toward the crest of the mountain, his operation and that of some of the parties operating from the other side of the mountain again broke into each other and caused inconvenience to both, as well as interfering with efficient mining.

Then on the 8th of July, 1920, Addison brought his equitable action against Jackson Brandenburg, Price, and Durbin & Rader, alleging in substance that Brandenburg had, in violation of his written lease to Brandenburg and Young, of which Addison was then the owner, executed to Price and Durbin & Rader, other coal leases embracing a portion of the same land embraced in the

Brandenburg and Young lease; and that the said lessees had unlawfully and in violation of the plaintiff's rights entered upon such portion of the land and mined and removed coal therefrom. That one of the lessees of Brandenburg had driven an entry across and in front of the plaintiff's entry and cut him off from a large part of the coal embraced within his lease, and had damaged and injured his mine, and had in a large degree prevented him from operating under his lease, and had interfered with the operation of plaintiff's mine. That the lessees had mined and removed large quantities of coal from plaintiff's said lease, and he prayed judgment against each of defendants for the value of the coal so removed, and for an injunction.

This original action, so far as the plaintiff's petition is concerned, dealt wholly with the written lease, and made no mention whatsoever of the verbal lease under which the plaintiff was operating when he became the owner of the written lease.

In an answer and counterclaim it was denied that the Brandenburg and Young lease had ever been assigned to Addison, or that he ever owned or had any interest in it, or that he had ever operated under the same, or paid any royalty to Jackson Brandenburg because of his operation under that lease. It was denied that the lease covered any part of the boundaries embraced in the leases to Price or Durbin & Rader, or that any of them had entered upon any portion of the land included in the lease to Brandenburg and Young, or had driven an entry across or in front of the plaintiff's entry, or cut him off from mining any coal from the Brandenburg and Young lease. It was by way of counterclaim alleged that Jackson Brandenburg executed the lease to Brandenburg and Young in consideration of his personal confidence in them, and that same was not intended to be and was not assignable; that at the time of the execution of such lease Addison was mining and removing coal from other property adjoining, belonging to Jackson Brandenburg, under a verbal lease which the latter had theretofore made with Addison, whereby he was permitted to mine coal from a small tract of land adjoining the other lease at the pleasure of Jackson Brandenburg, and subject to cancellation or termination by him without notice. That Addison while operating under such verbal lease, without the knowledge or consent of Jackson Brandenburg, en-

croached upon the lease made to Brandenburg and Young so that they were compelled to abandon their said lease, and they thereafter by the consent of Jackson Brandenburg assigned same to one Henry, and that he likewise was compelled, by the encroachment of Addison, to abandon his mining operations under said lease; that each of said parties had abandoned the mining operations under the written lease for a long time prior to the assignment thereof to Addison, and that the same had therefore been forfeited and terminated before his said pretended purchase. That Addison by his wrongful acts and conduct broke into the entry made on the Brandenburg and Young lease so that the same could not thereafter be worked, as well as that by reason of his said trespass and wrongful acts he damaged the tract in so far as removal of coal therefrom is concerned, and that by his unskillful and unworkmanlike manner, and in the pulling and removing of stumps and supports of the roof whereby he had damaged same: It was also alleged that neither Price nor Durbin & Rader were operating, or attempting to operate, on the property embraced in the Brandenburg and Young lease, but were removing coal from other property of Jackson Brandenburg.

After this an amended answer and counterclaim was filed alleging that Addison had entered upon the written lease and had made and was making excavations and openings for the purpose of driving a new entry thereon, and removing coal therefrom. And a restraining order restraining Addison from entering upon the tract of land embraced in that written lease for any purpose whatever was issued.

By a reply Addison denied the allegations of the answer and counterclaim, and alleged affirmatively that the assignment from Henry to him was made by and with the consent and approval of Brandenburg, and that he had acquiesced therein and permitted Addison to mine coal therefrom, and had received and accepted from him the royalties therefor, which latter allegations were put in issue by a rejoinder.

On the 2nd of August, 1920, Brandenburg gave to Addison a written notice terminating the verbal lease, and directing him not to mine any other coal thereon, or to remove any coal from any other property through the opening on the verbal lease.

On the 22nd of September, 1920, Brandenburg filed his equitable action against Addison and his employees seeking to enjoin them from further operations on the verbal lease. In that action he alleged that under the terms of his verbal agreement with Addison the lease was to be terminated any time Brandenburg desired, without notice or demand, and, relying upon his notice of the 2nd of August as the termination of the lease, he asked an injunction to prevent further operations thereon. He alleged that since such termination of the lease Addison and his employees had wrongfully, and without right, entered upon this tract of land and mined and removed therefrom 450 tons of coal, and that in so doing they had mined and removed the ribs and stumps supporting the roof of the mine, and were threatening to and would, unless enjoined, continue to so remove the stumps and pillars whereby the mine would be destroyed, and whereby the plaintiff would be injured. He asserted the insolvency of each of the defendants, and on that day the clerk of the circuit court issued a temporary restraining order against Addison and his employees restraining them from entering upon the tract of land embraced in the verbal lease, or from mining or removing or marketing any coal therefrom.

The defendants answered denying the injury and denying the nature of the verbal agreement between Brandenburg and Addison, and asserted that under the agreement made in 1916 the same was to run until the first of the calendar year 1917, and then from year to year so long as the royalties should be paid thereunder; and that if Brandenburg should at any time decide to cancel the lease at the first of any calendar year, he should notify Addison in such time as to enable him to clean up the mine before the first of such year, and prepare for its expiration. It is further alleged by way of counterclaim that Jackson Brandenburg had hauled away and sold and appropriated the proceeds of the 450 tons of coal mined from said verbal lease, of the value of $4,050.00, for which Addison prayed judgment. In a reply Brandenburg denied the terms of the verbal lease as asserted by Addison, and denied that the coal at the mouth of the mine was of greater value than $1,500.00, or that same was taken by him wrongfully.

In his petition in the second action Brandenburg alleged that since the termination of the lease by him in giving the notice on the 2nd of August, 1920, Addison and his employes had, without his consent, entered upon the verbal lease and removed therefrom 450 tons of coal, and in so doing had mined and removed part of the ribs and stumps supporting the roof of the mine. In the reply by Addison and his employees this allegation is not denied, except that the same was wrongfully or unlawfully done; on the contrary, it is alleged that the 450 tons of coal had been mined

"from said mine under his said lease" and "which he had caused to be digged under said lease upon said land."

From these pleadings in the second action it will be seen that it stands admitted the 450 tons of coal were mined from the verbal lease, and that the plaintiff's allegation that the same had been mined since the termination of the lease by him on the 2nd of August, 1920, is undenied.

By agreement the two actions were consolidated and the evidence heard in open court, and taken down by a stenographer. On submission the petition of Addison in the first action was dismissed, and on the counterclaim the temporary injunction theretofore granted was made perpetual, thereby in effect cancelling or forfeiting the written lease; in the other action the temporary injunction against Brandenburg was made perpetual, and no judgment was entered against Brandenburg for the value of the coal left at the mouth of the mine, and the counterclaim dismissed.

The court apparently found as a fact that the verbal agreement involved in the second action was only to the effect that Addison was to mine coal upon the prescribed tract of land at the pleasure of Brandenburg, and the very fact that the agreement between them was in parol is persuasive that Brandenburg did not intend to bind himself with reference to that tract of land for any given period. The evidence on this issue was conflicting, but we are unwilling to say the finding of the chancellor was against the weight of the evidence, and therefore it seems conclusive that when on the second of August, 1920, Brandenburg gave the written notice to Addison terminating the oral lease or license, thereafter he had no

right to go upon the property or to mine coal therefrom. As the pleadings seem to concede that the 450 tons of coal in controversy were mined by Addison and his employees from the tract involved in the verbal lease, and after the same had been terminated, he is not entitled to recover from Brandenburg the value of such coal.

We are likewise convinced from the evidence that there was in fact no conflict between the written leases to Brandenburg and Young, and the verbal lease to Addison, nor was there any conflict between the lease of Brandenburg to Price and Durbin & Rader, and the Brandenburg and Young lease assigned to Addison.

It is likewise apparent from the evidence that the stumps and ribs taken out by Addison were almost exclusively, if not entirely, from the upper end of the verbal lease, and that little if any of this sort of thing was done upon the written lease. It is true that witnesses who went into the mine a short time before the trial in the circuit court testified the mine on the written lease was at places in bad shape, and that a great deal of slate had fallen, and that it was impracticable in its then condition to operate it. But these witnesses saw the conditions some seven or eight months after the mine had been operated. During such a period of non-use it is only natural that the mine should have been in a bad condition; but the same witnesses in referring to the stumps and ribs that had been removed generally speak of such conditions at the upper end of the verbal lease, and have little to say about such removal at any point within the written lease.

The written lease was for a term of two years with the privilege of extending the same for three years longer, and the contention that under section 2292, Ky. Stats., the assignment to Addison operated as a forfeiture of the lease to the lessor, is not tenable. That statute on its face declares that only such assignments or transfers of a term by a lessee "who has a term less than two years" shall operate as a forfeiture, and it has been expressly held under that statute the assignment of such a lease, without the consent of the landlord, does not operate to forfeit the same or authorize the landlord to re-enter. Grizzle v. Pennington, 14 Bush 115.

Nor are we impressed with the contention that the lease had, before the assignment to Addison, been for-

feited by reason of the failure to operate the mine. It is true at the time of the assignment to Addison there had been no operation, except by Addison himself, of the written lease for some time, but it is apparent Brandenburg did not treat the failure to operate as a forfeiture, for he not only advised Addison to become the owner of the written lease to the end that the controversy might be settled, but he thereafter accepted royalties from Addison for coal mined on both of the leases.

But the earnest contention is made for appellee that the written lease was properly forfeited under the provisions of section 2328, Ky. Stats., because of the waste committed thereon by Addison. That section reads as follows:

> "If any tenant for life or years shall commit waste during his estate or term, of anything belonging to the tenement so held, without special license, in writing, so to do, he shall be subject to an action of waste, shall lose the thing wasted, and pay treble the amount at which the waste shall be assessed."

It has been held, however, under that section it was intended only to authorize an action for voluntary waste consisting in the commission of some destructive act, and not for mere permissive waste consisting in an omission to keep the property in repair. Smith v. Mattingly, 96 Ky. 228.

Surely then if the treble damages provided for in that section may be only assessed when there has been a wanton or destructive act committed against the leasehold, it cannot be said that anything short of such voluntary waste could be an equitable ground for cancellation or forfeiture of the lease. Roby v. Newton (Ga.), 68 L. R. A. 601.

We have seen from the evidence that the waste committed on the written lease was chiefly such waste as grew out of the non-use of the mine, and such non-use appears to have been brought about by reason of these two litigations. Equity never favors a forfeiture, and will enforce it only in obedience to some strict provision of law or under the strict and literal terms of a contract. And even then the law or the contract will be strictly construed against the party invoking its provisions and claiming the forfeiture. Hogg v. Forsythe, 198 Ky. 462; Ky. River Navigation Co. v. Commonwealth, 13 Bush 435.

It results from what we have said that the chancellor below erred in cancelling or forfeiting the written lease of which Addison was the owner, and in granting the injunction which prevented him from operating the same. In all other respects the judgment is approved.

For the reasons given the judgment is reversed, with directions to enter a judgment as herein indicated.

Whole court sitting.