## Big Jack Oil & Development Company v. McGinnis.

(Decided May 20, 1924.)

### Appeal from Warren Circuit Court.

1. Mines and Minerals—Lease Held Not to be Forfeited for Failure to Drill Additional Well.—Under lease providing for forfeiture if active operations, "to-wit, active drilling or piping or marketing of oil shall cease at any time for a period of thirty days," held, that lessor was not entitled to forfeit for lessee's failure to drill additional wells as required by contract, lessee meanwhile piping and marketing oil.
2. Mines and Minerals—Forfeiture Not Adjudged Unless Fairly Within Language of Contract.—Forfeiture of an oil and gas lease will not be adjudged unless fairly within language of contract.

THOMAS, THOMAS & LOGAN, DOLLE, TAYLOR, O'DONNELL & GEISLER for appellant

RODES & HARLIN for appellee.

Opinion of the Court by Commissioner Hobson—
Reversing.

On June 25, 1919, appellee executed an oil and gas lease covering a farm of two hundred and eighty-five acres owned by him in Warren county. The lease was transferred by the lessees to appellant. It contained, among other things, these provisions:

"It is agreed that this lease shall remain in force for a term of three years from this date if complied with as conditioned below, and as long thereafter as oil and gas is produced thereon unless surrendered by second parties.

"The parties of the second part (lessee) agree to begin a well on said premises within ninety days from abstract of title and failure to drill within the time mentioned the lease ceases.

"It is further agreed that if at any time active operations should cease, that is active drilling, piping or active work for a period of thirty days or more, then this contract or lease shall cease at once and full possession shall revert to the lessor."

Within ninety days from the execution of the lease appellant began the drilling of a well which it completed on November 16, 1919. The well produced some oil but not enough to be important. Appellant then concluded to drill on another part of the farm well number 2. While the drilling of this well was going on by a contractor he struck a pocket of gas which ignited and set fire to his rig, entirely destroying it. Before appellant could get another rig to the place more than thirty days elapsed and when they came with another rig appellee locked the gate and refused them admittance. After some discussion the following supplemental written contract was entered into between appellant and appellee:

"This Agreement Made this the 27th day of March, 1920, between A. A. McGinnis and the Big Jack Oil & Development Company, a Delaware corporation.

"Witnesseth: Whereas the oil and gas lease dated — day of ——, 1919, given by said McGinnis to McAndrews & Batts and now owned by said Oil & Development Company, provided that if active operation should cease upon said lease for a period of thirty days, then said lease should be void; and

whereas said McGinnis is claiming that by reason of the cessation of operations for more than thirty days, the said lease has now terminated.

"Now, in consideration of said McGinnis waiving the forfeiture of said lease now claimed by him, this agreement is made to more perfectly insure the prompt and efficient development of said property. Said oil and development company agrees to at once resume drilling on said property and to diligently continue the same until the completion of one well; at which time, or within thirty days thereafter, it will begin the drilling of two additional wells and continue said drilling operations with diligence until completion. Within thirty days from the completion of the first well, two drilling machines shall be continually employed on the property until the same is reasonably developed for oil and gas and all operations shall be diligently prosecuted.

"It is further agreed that if active operations, that is to say active drilling or piping or marketing of oil, shall cease at any time for a period of thirty days, then the said lease shall be null and void.

"Witness our hands this March 27, 1920.

"(Signed) THE BIG JACK OIL & DEVELOPMENT CO.

By R. R. McMURTRY, President.

A. A. McGINNIS."

After this contract was made appellant completed well number 2 and also wells number 3, 4, 5, 6, 7 and 8. Both the Louisville and Nashville Railroad Company and the Louisville and Nashville turnpike run through appellee's farm. Well number 1 was on that part of the tract cut off from the remainder by the turnpike. The other seven wells were on that part of the tract lying between the railroad and the turnpike and located near the right of way of the railroad. Each of these wells was an oil producer and all of them had to be pumped. After putting down these eight wells appellant stopped drilling and declined to drill other wells as requested by appellee, but it continued to pump the seven wells near the railroad and he received his royalty therefrom. The oil produced from these wells was sold for $15,518.77 and appellee received in royalties $2,216.96; appellant received $13,926.18. Up to this time appellant had expended in developing the lease $35,334.65. In this condition of affairs on March 23, 1921, appellee brought this

suit against appellant, alleging that it had breached the contract and that by reason of the breaches of the contract the lease had been forfeited. An answer was filed controverting the allegations of the petition and on final hearing the circuit court adjudged the lease cancelled as to all the tract except that part lying between the railroad and turnpike.

From this judgment the lessee appeals and the lessor prosecutes a cross-appeal, insisting that the lease should have been cancelled as to all except twenty-five acres of this tract.

The first question to be determined in the case is, what grounds of forfeiture are provided by the supplemental contract? It provides that this agreement is made to more perfectly insure the prompt and efficient development of the property. The lessee agrees to at once resume drilling on the property and diligently continue the same until the completion of one well and within thirty days thereafter to begin the drilling of two additional wells and to employ two drilling machines continually until the property is reasonably developed for oil and gas and to prosecute diligently all operations, but no forfeiture is provided for a failure to do these things. The only forfeiture provision of the contract is in the last paragraph, which provides that the lease shall be null and void if active operations, to-wit, active drilling or piping or marketing of oil, shall cease at any time for a period of thirty days. These words cannot mean that, if any one of the three things specified shall cease at any time for a period of thirty days, the lease shall be null and void; for if the wells dug should fail or produce no oil, piping or marketing of oil could not go on until other wells were drilled; and if all the wells necessary to develop the property were drilled the lessee would lose no rights if he continued to pipe and market the oil from the wells drilled. The sense of the clause is that the lease shall be null and void if active operations cease for a period of thirty days and the intervening words simply define what is meant by active operations.

> "The language must be interpreted against the one claiming the forfeiture, and the forfeiture will not be declared except under the strict and literal terms of the instrument." Hogg and Pluto Coal Co. v. Forsythe, 198 Ky. 469.

"Equity never favors a forfeiture, and will enforce it only in obedience to some strict provision of law or under the strict and literal terms of a contract. And even then the law or the contract will be strictly construed against the party invoking its provisions and claiming the forfeiture." Addison v. Brandenburg, 202 Ky. 588.

These cases involved leases of coal lands, and while a more liberal rule has been laid down as to oil and gas leases, a forfeiture of an oil and gas lease will not be adjudged unless fairly within the language of the contract.

The evidence clearly shows that appellant had not ceased active operations on the property at any time, and if it had failed to live up to the covenants of the contract as to the development of the property, this cannot be a ground for the forfeiture of the lease under the terms of the contract, although it may be ground for an action to recover damages for the breach. Much of the evidence is devoted to showing why no other wells were drilled, but this need not be noticed for the reason above given, as it is not material in this action to forfeit the lease.

Judgment reversed and cause remanded with directions to dismiss the petition without prejudice to an action to recover damages for the breach of any covenant in the contract.