## Brandenberg, et al. v. Addison.

## Brandenberg's Executor v. Same.

(Decided October 18, 1927.)

### Appeals from Lee Circuit Court.

1. Appeal and Error.—Where actions on injunction bond against sureties against executor and heirs of decedent for malicious prosecution of action for injunction, and against sureties in bond given to obtain restraining order, were consolidated, and judgment against sureties on injunction bond for certain amount for attorney's fees evidently covered whole attorney's fees in former action, payment thereof by sureties removed question of attorney's fees from case on appeal.

2. Election of Remedies.—Where actions against sureties on injunction bond, against sureties on bond given to obtain restraining order, and against executor and heirs of party suing for injunction for malicious prosecution, were consolidated, refusal to require plaintiff to elect whether he would prosecute action on injunction bond or action for malicious prosecution was proper.

3. Malicious Prosecution.—To sustain action for malicious prosecution of civil action, there must be both evidence of malice and of want of probable cause, and in consolidated actions against sureties on injunction bond, against sureties on bond to obtain restraining order and against executor and heirs of party who sued for injunction for malicious prosecution, in absence of evidence of malice, peremptory instruction for executor and heirs should have been given on motion, in view of conclusive evidence of probable

cause consisting of facts that plaintiff therein relied on advice of competent attorneys on law question in lease, and that circuit court gave judgment for plaintiff.

4. Malicious Prosecution.—In action for malicious prosecution of injunction suit, judgment of circuit court in favor of plaintiff therein is conclusive evidence of probable cause.

5. Injunction.—Where operation under written mining lease was enjoined by trial court, whose judgment was reversed, only remedy of defendant therein was on injunction bond.

6. Injunction.—If penalty of bond given in suit to enjoin operation under mining lease was not sufficient, additional bond might have been required pending action.

7. Injunction.—Amount specified in injunction bond is limit of sureties' liability for issuance of wrongful injunction.

8. Injunction.—Measure of damages for injunction preventing plaintiff from mining coal would depend on difference between market price which he would have gotten for coal and the cost of getting coal to market.

9. Evidence.—In action on injunction bond for damages from being kept by injunction from mining coal, evidence of market price of other coal would be admissible, if it and coal in question were practically the same quality; but difference in freight charges should also be shown to make evidence of any value.

10. Injunction.—In action on injunction bond and on bond given to obtain restraining order for damages from being kept from mining coal, evidence of work done in getting entry through and getting things prepared for getting out coal before issuance of restraining order was admissible to illustrate what had to be done thereafter to get out coal; but amount plaintiff spent in such work was immaterial.

11. Injunction.—In action on injunction bond and on bond given to obtain restraining order for damages from being kept from mining coal, evidence as to what plaintiff got for coal before issuance of restraining order should have been admitted, in view of showing that he could not have gotten out any coal for some weeks thereafter, if no injunction had been granted, and of fact that only evidence of price of coal at time he could have gotten it out and was prevented by injunction was competent in chief.

12. Injunction.—In action on injunction bond and on bond given to obtain restraining order for damages from being prevented from mining coal, evidence that plaintiff stated at about time in question that he was not making money in mining was competent; but, if such proof is introduced on second trial, plaintiff may show what he was in fact making, to confirm his denial of having made such statement.

13. Evidence.—In action on injunction bond and bond to obtain restraining order for damages from being prevented from mining coal, permitting plaintiff to show what plaintiff in injunction suit got for coal adjudged to him was improper, unless it was first

shown that present plaintiff, unless prevented by injunction, might have had coal to sell then.

14. Injunction.—In consolidated actions on injunction bond and bond given to obtain restraining order for damages from being prevented from mining coal, where judgment as to amount paid for attorney's fees was not appealed from, plaintiff would be entitled to recover reasonable profit on such coal as it was reasonably certain he would have mined and was prevented from mining by injunction not exceeding amount of bond, less half of judgment for attorney's fees, which was not appealed from.

15. Injunction.—In action on injunction bond and bond given to obtain restraining order for damages from being prevented from mining coal, "reasonable profit" on coal which plaintiff could have mined, to which he was entitled as damages, was difference between fair market price at time plaintiff would have gotten coal out and necessary expense in opening, maintaining, and conducting mine, getting coal out, and getting it to market, including royalty.

16. Injunction.—Where action on injunction bond was consolidated with action on bond given to obtain restraining order, sureties on both bonds were liable for attorney's fee, from judgment as to which there was no appeal, and sureties on injunction bond were only liable for damages from enjoining mining of coal for penalty of bond, less one-half attorney's fee.

17. Trial.—In argument to jury where defendants' attorney objected to statements of plaitniff's attorney as to testimony of certain witnesses, court's admonition that jury would remember evidence, and not otherwise ruling on objection, was error.

BEATTY & BEATTY and S. MONROE NICKELL for appellants.

O. H. POLLARD and E. C. HYDEN for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

In January, 1918, Jackson Brandenberg executed a written lease for about 15 acres of coal land. The lease, by assignment, passed to Millard Addison, who also claimed under a verbal lease some adjoining coal land. On July 8, 1920, Addison brought an equitable action to enjoin Brandenberg from interfering with him while operating under the verbal lease. Brandenberg, by his answer, denied Addison's rights under the verbal lease, and also by counterclaim sought a judgment enjoining him from operating under the written lease. On December 3, 1920, Brandenberg obtained a restraining order against Addison, enjoining him from operating further under the written lease, and, on January 12, he obtained

an injunction which, on final hearing in the circuit court, was perpetuated. But on appeal to this court the judgment of the circuit court, canceling the written lease, was reversed, with directions to dismiss the cross-petition. Addison v. Brandenberg, 202 Ky. 580, 260 S. W. 381. Brandenberg having died, J. C. Brandenberg qualified as the executor of his estate, and on May 1, 1925, Addison brought this suit against the executor and heirs of Jackson Brandenberg, the sureties in the bond executed when the restraining order was obtained, and the sureties in the injunction bond, setting out the above facts, and praying judgment against the executor and heirs for $10,000, and against the sureties in each bond for the amount of the bond, which was $1,000. He also alleged in his petition that the restraining order and the injunction were each sued out by Brandenberg maliciously and without probable cause. The defendants entered a motion that the plaintiff be required to elect which of the three causes of action set out in the petition he would prosecute. The court sustained the motion, and the plaintiff, under protest, elected to prosecute the cause of action on the injunction bond against the sureties therein. The plaintiff then dismissed, without prejudice to a future action, so much of his action as sought to recover for a malicious prosecution of the action; also so much as sought to recover damages on the bond given to obtain the resteraining order on December 3, 1920. The issues were made up in that action. The plaintiff then filed a second action against the executor and heirs of Jackson Brandenberg, in which he sought damages in the sum of $30,000, for the malicious prosecution of a former action. He then filed a third suit against the sureties in the bond executed December 3, 1920, to obtain the restraining order against the sureties therein, praying judgment against them in the sum of $1,000, the amount of the bond. Under an order of the court, to which the defendants objected, the three actions were ordered heard together. The jury found a verdict for the plaintiff, fixing the attorney's fees on the injunction at $150. On the balance of the case they found for the defendants in the bond executed December 3, to obtain the restraining order. They also found against the defendants, who executed the injunction bond, $150 for the attorney's fees, and $500 as damages. They found a verdict against the exe-

cutor for $2,000. As there was no judgment against the sureties in the restraining order bond, except for $150, no appeal has been prosecuted by them. The other parties appeal. The $150 for attorney's fees evidently covers the whole attorney's fee in the former action, and the payment of that judgment by the sureties in that bond removes the question of the attorney's fees from the case.

At the conclusion of the evidence the executor and heirs moved the court for a peremptory instruction as to them, and also insisted that the plaintiff should be required to elect which action he would prosecute, the action on the injunction bond or the action for damages. The rule on the subject is thus well stated in 32 C. J. p. 434, sec. 744:

"But although there is contrary authority, the general rule, unless changed by statute, is that without a bond for the payment of damages, or other obligation of like effect, a party against whom an injunction has been wrongfully issued can recover no damages unless he can make out a case of malicious prosecution by showing malice and want of probable cause on the part of the party who obtained the injunction. Nevertheless, in accordance with well-settled principles elsewhere considered, if a party in prosecuting an action for injunction is actuated by malice, and proceeds without probable cause, the injured party has a common-law remedy for malicious prosecution."

The court, therefore, properly refused to require the plaintiff to elect which of the two actions he would prosecute; but he should have given a peremptory instruction for the defendants in the action for malicious prosecution upon all the evidence, for there was no evidence of malice; there was conclusive evidence of probable cause, and both must concur to sustain the action. Pettit, etc., v. Mercer, 8 B. Mon. 52. The rights of the parties under the written lease depended upon a pure question of law. Brandenberg acted upon the advice of his attorneys, who stood high in their profession. The circuit court, to whom the case was submitted, gave judgment in favor of Brandenberg, sustaining the view of his attorneys. No rule is better settled than that the judgment of the circuit

court on a question of this sort in favor of a party is conclusive evidence of probable cause.  38 C. J. p. 419; 18 R. C. L. p. 37; Hegan Mantel Co. v. Alford (Ky.) 114 S. W. 290.  It follows that the court in the action for malicious prosecution should have sustained the motion of the executor and heirs for a peremptory instruction.  Addison's only remedy is upon the injunction bond.  If the amount of the penalty in the bond is not sufficient to protect him, this is a matter that should have been corrected while the action was pending and an additional bond might have been required.

As to the action on the injunction bond the amount specified in the bond is the limit of the sureties' liability. On another trial of the case, as the attorney's fee has been fixed, this matter will not be submitted to the jury. The substance of Addison's claim for damages is that by reason of the injunction he was prevented from getting out the coal.  His damages would depend upon the difference between the market price he would have gotten for the coal and what it would have cost him to get the coal in the market.  Brandenberg makes this statement as to how he was selling the coal:

> "Well, I was loading a great deal of it on cars, and then barges come in there that I sold to, and then I furnished a good deal around town—Heidelberg.  The barges would take it down the river.  I would sell it to them right there in Heidelberg when it was loaded."

The cars referred to were those operated by the Louisville & Nashville Railroad Company.  Where the coal shipped on the cars was sold he does not state; but, as part of his coal was shipped away on the cars, the market price of such coal was a subject on which evidence was proper.  At one time the court seems to have limited the case entirely to the market at Heidelberg, but when he came to instruct the jury he did not so limit it.  The defendants claim that they were misled by this, but however this may be, on another trial the court will allow the evidence as to the market price of the coal shipped on the cars.  The defendants offered evidence to show the market price of coal shipped from Perry county.  If the Perry county coal and the coal in controversy were practically of the same quality, this evidence may be admit-

ted; but the difference in the freight charges from Perry and Lee should also be shown to make the evidence of any value.

It is clear from the evidence that the plaintiff could have gotten out no coal while the restraining order was in force and before the injunction was granted. But he could in this time, unless restrained by the order, have made progress in getting his entry through, and getting all things prepared for getting out the coal. What work he had done in this direction before the restraining order was made may be shown, because this will help to illustrate what had to be done thereafter in order to get out coal. But how much plaintiff had spent on this work is immaterial. The court should not have allowed Addison to prove what he got for coal before December 3, 1920, for it is clear from the evidence that he could not have gotten out any coal for some weeks after that time, if no injunction had been granted, and only evidence of the price of coal at the time that he could have gotten out coal and was prevented by the injunction from getting it out is competent in chief.

The defendants offered to prove a statement of Addison, made about the time the trouble came up, which was in substance that he was making no money on the coal or was losing money. The court refused to allow this evidence to be given. What Addison said about the business at that time is competent to be shown by the defendants; but, if this proof is given, then Addison may introduce proof showing what he was in fact making as a circumstance confirming his denial that he made such a statement. It was also improper to allow the plaintiff to show what Brandenburg got for the 400 tons of coal that were adjudged to him in the former suit, unless it was first shown that Addison, unless prevented by the injunction, might have had coal to sell and deliver at the time of this sale.

The instructions of the court did not clearly present the correct measure of damages. On another trial the court will give the jury the following instructions:

1. If the jury believe from the evidence that plaintiff would have gotten out the coal, on the land in controversy, but for the injunction, and would have made a profit thereon, they should find for the plaintiff the reasonable profit he would have made on so much coal as it is reason-

ably certain he would have gotten out from said land, and was prevented from getting out by the injunction not exceeding $925. Unless they so believe from the evidence, the jury should find for the defendants.

2. The reasonable profit is the difference between the fair market price of the coal at the time plaintiff would have gotten it out, but for the injunction, and the necessary expense he would have incurred in opening, maintaining, and conducting the mine, getting out the coal, and getting it to market, including the royalty.

The sureties in both bonds are liable for the attorney's fee, and so, the fee having been settled, the sureties in the injunction bond are only liable for the penalty of the bond ($1,000), less one-half the attorney's fee ($150).

In the final argument to the jury the attorney for the plaintiff stated to them that certain witnesses had testified to certain facts. The attorney for the defendants several times objected on the ground that the witnesses had not made these statements. The court admonished the jury that they would remember the evidence, but did not otherwise rule on the objection. This was error. In Greenwell v. Commonwealth, 125 Ky. 204, 100 S. W. 855, 30 Ky. Law Rep. 1282, which was a like case, this court said:

> "The court should not have thus left the jury to determine whether the counsel was going out of the record or not. If he was out of the record, the court should have sustained the objection, and stopped the argument; or, if he was not out of record, he should have overruled the objection. If the court did not remember the evidence, he should have refreshed his recollection. The jury should not be allowed to hear an improper argument, with an admonition that they are to disregard it if it is outside of the record, for this leaves to the jury a matter which the court should determine. The jury should not hear the improper argument."

Judgment reversed, and cause remanded for further proceedings consistent herewith.