COMMONWEALTH of Kentucky, DEPART-
MENT OF HIGHWAYS, Appellant,

v.

Rose ADKINS et al., Appellees.

Court of Appeals of Kentucky.

Dec. 3, 1965.

Robert Matthews, Atty. Gen., William A. Lamkin, Jr., Asst. Atty. Gen., Phillip K. Wicker, Somerset, Eugene H. Clark, Manchester, for appellant.

J. B. Johnson, J. B. Johnson, Jr., R. L. Brown, Williamsburg, for appellees.

PALMORE, Judge.

This is a highway condemnation case in which the Commonwealth appeals from a judgment entered on a verdict awarding the appellees $10,000 as the diminution in value of their land by reason of the taking of 2.9 acres outright and a permanent easement over an additional .15 of an acre.

There is a conflict in the evidence as to whether the whole tract before the taking amounted to a total of 36 acres as called for by the deed or 20.58 acres as calculated by the highway department. However, it is of no importance, because regardless of how much land is left it is conceded that only a four-acre part of it has any substantial value.

The 2.9-acre taking embraced all the improvements, consisting of a 6-room concrete block dwelling house and several outbuildings. The house was about nine years old and did not have inside plumbing. It was located on a relatively level shelf or bench at the foot of a hill. The four acres heretofore mentioned were on top of the hill behind the house.

The property in question lies some 450 feet west [1] of U.S. Highway 25W, to which it had direct access by a gravel road. It is bounded on the north by Little Cane Creek, which runs in an east-west direction. The 2.9 acres taken are part of a strip on which limited access Interstate Highway 75 has been or will be constructed. This strip separates the remainder parcel from U.S. 25W, and henceforth access between the remainder tract and the public highway system will be by way of a frontage road which runs northward along the west side of I–75 for about a mile and a half and then through an underpass to U.S. 25W.

The frontage road does not enter appellees' tract, but comes down from the northwest and makes what appears to be a flattened "U" turn to the east and then northward along the west side of I–75, the bottom of the "U" being the center of Little Cane Creek. Incredible as it may seem, according to both the testimony and the map introduced by the Commonwealth the only place at which the frontage road

---

1. It may be more south than west, but for the purposes at hand we shall consider U.S. 25 and I–75 as running north —south.

touches the remainder of the appellees' property is along the thread of Little Cane Creek—that is, the south right-of-way line of the frontage road is in the creek. We do not know how much of a stream it is, but in order to make a connection between the frontage road and dry land it would appear to be necessary for appellees to construct either a bridge or fill of some kind, after which it would be necessary also to scale or somehow remove a formidable bluff which borders the south bank of the creek as it flows past the remainder tract.

We have outlined the access situation because it forms the background against which one of the Commonwealth's arguments in support of this appeal must be considered. The distance that will have to be traveled in order to reach U.S. 25, and in order to come back down that highway to the village of Pleasant View, which was but a mile or so from the condemned property before the interposition of I–75, was brought out by counsel for the landowners through cross-examination of the state's witnesses, over objections by counsel for the state.

■ It has been firmly established that "the only access right the landowner has is a right of reasonable access to the highway system." Commonwealth v. Carlisle, Ky., 363 S.W.2d 104, 107 (1962). Conversely, he cannot be deprived of reasonable access without just compensation. Commonwealth, Dept. of Highways v. Caudill, Ky., 388 S.W.2d 376, 379 (1965). It follows, we think, that he must be entitled to show what he will have left in the way of access before it can be determined whether it is reasonable. Ordinarily this question should be resolved by the court as a matter of law, but in order for it to be resolved at all it would seem indispensable that the facts be disclosed. If it appears that the landowner will be subjected merely to circuity of travel (within reasonable limits), the court may properly be requested to admonish the jury not to consider that circumstance as a fac-

tor in arriving at the reduced value of the remaining property; but we do not feel that it is incumbent on the court to give the admonition of its own volition. Cf. Commonwealth, Dept. of Highways v. Shaw, Ky., 390 S.W.2d 161, 163 (1965). No admonition was requested in this case, nor was the court asked to give an instruction on the point. Whether the location of the frontage road was such as to provide reasonable access is a question on which the trial court was not asked to rule and we do not find necessary to decide.

■ The trial court should have sustained objections to those particular questions directed to the distance that will now have to be traveled back down U.S. 25 to the Pleasant View community, but we are not persuaded that any substantial prejudice resulted. In this connection, the opinions of the respective sets of witnesses as to the value of the property after the taking did not vary widely anyway, and that is the only figure that could have been influenced by the questionable testimony. The real differences developed by the evidence were in the before values.

During cross-examination by the Commonwealth the landowners' witness Everett Rains testified as follows:

Q. "Mr. Rains, if the home is worth $8,000 and the land taken $4,000, and the land left that would be about $16,000?"

A. "It is worth more money to the woman here than to anyone else because she had been there all the time."

Q. "Did you consider that was her old home and she didn't want to sell it?"

A. "You would have to."

This witness had testified on direct examination that the whole property before the taking was worth $11,000 to $11,500 and the portion left thereafter had a market value of $1,200 to $1,500. In the cross-

examination immediately preceding the testimony quoted above he had been asked as follows:

Q. "Mr. Rains, what factors did you consider in arriving at this $11,000 to $11,500?"

A. "Well, that had been a nice home beforehand."

Q. "How much did you consider it?"

A. "I would say around $6,000 to $8,000."

Q. "What about the land then?"

A. "About $4,000. Then the damage to the other property is about $4,000. There's not must left in there and you can't get to it."

On the basis of the foregoing excerpts counsel for the Commonwealth moved that the testimony of Rains be stricken in its entirety because he had considered an improper factor and had put price tags on separate items.

 The owner's unwillingness to sell is not a relevant factor in determining market value. Commonwealth, Dept. of Highways v. Darch, Ky., 374 S.W.2d 490 (1964). We are not convinced from reading his testimony that Rains's opinion actually was influenced to any substantial degree by his assumption that the owners did not wish to sell the property, but if so, it was incumbent on counsel to develop the fact more definitely than was done in this instance. Moreover, a motion to strike the entire testimony of a valuation witness is not an appropriate remedy unless it appears that his opinion is based solely or primarily on an improper factor. Commonwealth, Dept. of Highways v. Shaw, Ky., 390 S.W.2d 161, 163 (1965).

The same comment applies to the witness Herman Bradford, whose testimony was asked to be stricken on the strength of the following inconclusive exchange:

Q. "Did you consider the fact that this was these people's old home place and they didn't desire to sell?"

A. "Hardly nobody wants to sell out there."

 With respect to the argument that Rains arrived at an improper valuation by adding separate figures for the house and for the land, it was observed in Commonwealth, Dept. of Highways v. Cardinal Hill Nursery, Ky., 380 S.W.2d 249, 253 (1964), that the witness may properly estimate the amount by which major improvements enhance the value of the land. We do not gain the impression from the evidence of Rains, nor from the statements elicited from any of the other witnesses who testified in the same vein under cross-examination, that the value of the property was computed in an improper manner. As a matter of fact, the separate valuations of which complaint is made appear to have been little more than horseback estimates originating during and in response to the pressure of cross-examination.

The last contention in support of this appeal is that the Commonwealth was substantially prejudiced by improper comment of counsel for the landowners in his closing argument, which was:

"Three experts come in here from outside and all come within $10 of what this property is worth—isn't that amazing? I think the state is making a mistake here. I think instead of getting elected officials who reside in air-conditioned homes and buy cars out of * * *."

Mr. Clark: "Objection."

The Court: "Sustained."

"When you get experts like that * * *."

Mr. Clark: "Objection."

(No ruling.)

" * * * and they come up with something like this mathematically there is something unusual about it. I believe you can draw your own inferences and I will draw mine."

 This type of demagoguery has been decried and condemned often and universally by this and other courts. It not only tends to degrade the profession; it insults the intelligence of the jurors. However, we are not disposed to add further insult by assuming the jurors really were affected by it. The trial court evinced its disapproval by promptly sustaining the objection. No further admonition was requested. Cf. Betzing v. Wynn, Ky., 248 S.W.2d 727 (1952).

The judgment is affirmed.