**COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,**

**v.**

**C. M. BRUMFIELD et al.,**
**Appellees.**

Court of Appeals of Kentucky.

Dec. 16, 1966.

Rehearing Denied Sept. 29, 1967.

Robert Matthews, Atty. Gen., William A. Lamkin, Jr., Asst. Atty. Gen., Frankfort, Donald P. Moloney, Lexington, J. G. M. Robinson, Ashland, Walter Mobley, Flemingsburg, for appellant.

John W. McKenzie, John C. Clarke, Diederich & Hermansdorfer, H. David Hermansdorfer, Ashland, for appellees.

STEWART, Judge.

This is an appeal by the Commonwealth, Department of Highways, from a judgment awarding C. M. Brumfield and Maude Brumfield, his wife, $67,000 incident to the condemnation of 22.9 acres of their land.

Appellees' property, before this condemnation proceeding, consisted of 108.6 acres of farm land. It is situated on Ky. 180 as relocated, approximately seven or eight miles south of Ashland and two miles from the village of Cannonsburg. The terrain is rolling and hilly. The portion condemned is unimproved and is situated in the northwest portion of the tract. Witnesses introduced by the Commonwealth testified that, after the taking, there was an average increase in the value of the farm of $19,713; those who appeared in behalf of the property owners stated that, after the taking, there was a decrease in the value of the farm of $68,219.

It is contended reversible errors were committed: (1) In ruling that C. M. Brumfield was not required to answer certain questions when cross-examined except on condition that he be considered a witness for the Commonwealth; (2) in excluding the testimony that C. M. Brumfield gave at a former trial; (3) in allowing witnesses of the landowners to base damage estimates upon an alleged reduction of access to the newly constructed highway, Ky. 180; (4) in submitting instructions, over the objection of the Commonwealth, that were incorrect; (5) in stating to the jury that the 1959 and 1960 tax assessments of Brumfield were not sworn to; (6) in failing to rule in a proper manner on objections made to an alleged improper argument before the jury; and (7) in refusing to set aside the verdict as excessive.

The first two grounds dovetail into each other and they will be discussed together. C. M. Brumfield, testifying in his own behalf, mentioned several perfunctory details in connection with his farm and the surrounding community but gave no estimates concerning the value of his tract or of any other near-by land. In the course of his cross-examination by counsel for the Commonwealth, he was asked if his farm and the property in the immediate neighborhood had not increased in value since 1957. This question was objected to upon the assumption that this witness had not been qualified to express an opinion as to real estate values. The trial court, in passing on the objection, stated to counsel for the Commonwealth: "You may ask him if you want to make him your witness."

Counsel for the Commonwealth continued the interrogation of this witness with the qualification imposed, over the Commonwealth's objection, that he would be considered the Commonwealth's witness in re-

spect to all matters that had not been covered on direct examination. Brumfield was then asked if he did not in 1957, when the value of the property involved in the action at bar was in issue in a divorce-and-alimony suit between him and his ex-wife, state under oath that its worth was only $30,000. Counsel for the landowners objected, stating: "He is trying to impeach his own witness." Brumfield was also interrogated concerning the increase in the worth of his land growing out of the expected change that would result to it from the highway construction project. The same type of objection was interposed.

The trial court sustained objections to all these valuation questions on the theory that the Commonwealth had made Brumfield its witness and was undertaking to impeach him. An avowal was made in the circuit judge's chambers consisting of Brumfield's answers to questions propounded to him. In this avowal Brumfield stated that, at the time of condemning his land, the property in his opinion, before the 22.9 acres were severed, was worth $200,000. He hedged when asked whether or not he had stated this same property was worth $30,000 when he testified in the divorce-and-alimony case with his ex-wife. The Commonwealth offered to file and make a part of the record a complete certified transcript of his evidence in the former action but the trial judge refused to permit this transcript to be filed.

The trial court's ruling as to the evidence sought to be elicited from C. M. Brumfield conflicts with the clearly stated provisions of CR 43.06, which read, in part: "A party may call an adverse party * * * and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party, and the witness thus called may be contradicted and impeached by or on behalf of the adverse party also, and may be cross-examined by the adverse party only upon the subject matter of his examination in chief. Except as stated in the preceding sentence, *any witness called by a party and examined as to any matter material to any issue may be examined by the adverse party upon all matters material to every issue of the action.*" (Emphasis added.)

The limitation on cross-examination in the first sentence of CR 43.06 would apply only if the Commonwealth had called Brumfield as its witness and Brumfield's attorney had sought to cross-examine him. The cross-examination under the situation that developed in this case is governed by the second sentence of the Rule. It follows that the trial judge should have allowed counsel for the Commonwealth to examine Brumfield "upon all matters material to every issue of the action."

Was the testimony of C. M. Brumfield in a former action in 1957 in the Boyd Circuit Court, in which he placed a value on the identical property involved in this proceeding, competent evidence as an admission against interest?

In Schaible v. Uhl, Ky., 343 S.W.2d 578, an automobile, with George Uhl as the driver and Mr. and Mrs. Joseph Schaible as passengers, was involved in an accident. The Schaibles sued Uhl for damages growing out of their claimed injuries. A written statement of Joseph Schaible, exhibited at a pretrial conference which tended to hold Uhl blameless, was introduced at the trial to contradict the testimony of Schaible that Uhl's negligence caused the accident. It was contended the writing was nothing more than an impeaching statement. This court held that the writing was "an admission against interest by a party", and as such must be regarded as substantive evidence.

In the case of Johnson v. Tucker, Ky., 383 S.W.2d 325, it was held on the trial of a civil action for assault and battery that a plea of guilty to a criminal charge, involving the same offense, was competent as an admission against interest. However, that case went on to say that "the defendant may testify as to the circumstances under which the plea was made and explain the reasons for such a plea." See also Race v. Chappell, 304 Ky. 788, 202 S.W.2d 626, 628.

■ It was a prejudicial error for the trial court to rule, for the reason stated, that C. M. Brumfield could not be subjected to cross-examination concerning the valuation of his farm, provided it was first shown he was a qualified witness on real estate values. Furthermore, the testimony of Brumfield in the divorce-and-alimony action, wherein a dollar estimate was given by him on the identical property involved in this litigation, was admissible as substantive evidence, since it was indicated in that action he purported to have a knowledge of the worth of his farm.

The next assignment of error involves the evidence of the four witnesses who appeared in behalf of the landowners. Prior to their testifying, an engineer for the Commonwealth pointed out on a map the non-access frontage of the landowners' property, after the taking, which would abut on Ky. 180 as reconstructed. Although this witness testified that 500 feet of Ky. 180 contiguous to this property would be inclosed by a guardrail, it was stated by the engineer, and his testimony on this point is unrefuted, that the landowners would nevertheless have the same right of access to this area they had possessed before the rebuilding of this highway.

These four witnesses, in disregard of the engineer's testimony, treated this 500-foot stretch of highway as being non-access and stated this supposition was a main factor considered by them in measuring their appraisals of the after value of the property. They also advanced the view that, as the farm originally adjoined Ky. 180, it was "very adaptable" to subdivision purposes. Brooks Wells, a witness for the landowners, testifying on this point, said: "You could go or have an approach onto a black top road (old Ky. 180) and you could lay your * * * streets off coming on to that road." Wells and also the other witnesses for the landowners were permitted to testify that the purported diminution of the frontage on Ky. 180, as reconstructed, would require considerably more building of approaches to this portion of the farm and there would

be no choice left to the landowners as to where entrances would be located.

■ The uncontradicted testimony in this case discloses, as has been noted hereinbefore by the testimony of the Commonwealth's engineer, that there has been no loss of access upon the part of the landowners to the land bordering upon Ky. 180, as a result of its reconstruction. Under the evidence introduced, there was no issue involving a loss, or even a reduction, of access; therefore it was incumbent upon the trial judge to so inform the jury of this undisputed fact. See Commonwealth, Department of Highways v. Adkins, Ky., 396 S.W.2d 768. More than that, the trial judge should have rejected this evidence as incompetent when, upon its being offered at the trial, its introduction was objected to by the Commonwealth.

■ The loss of access that is complained of is the alleged loss of access to an anticipated subdivision. It is conclusively shown that the property of the landowners has never been used for any purpose other than a stock farm. It is located eight miles from Ashland, the population center of Boyd County; and it lies in a community where nothing but farming is engaged in. Then, too, there is a complete absence of testimony which manifests any probability or immediate prospect of dividing any portion of the farm into lots for subdivision purposes. We conclude the landowners were not entitled to introduce evidence of this character as a basis for its market value. See Commonwealth, Department of Highways v. Gearhart, Ky., 383 S.W.2d 922; Bowling Green-Warren County Airport Bd. v. Long, Ky., 364 S.W.2d 167.

Turning now to the instructions which submitted this case to the jury, it is chiefly argued that the portion added by the trial court to "Instruction 4," as offered by the Commonwealth, was error. We agree. A timely objection was interposed to this addition to Instruction 4. Complaint is also made that portions of other instructions

proffered by the Commonwealth were deleted.

It would serve no good purpose to discuss at length the points raised by the Commonwealth, in view of the fact that there will no doubt be a retrial of this proceeding. If there be a new trial, this court in Commonwealth, Department of Highways v. Priest, Ky., 387 S.W.2d 302, 306, has succinctly set forth the instructions which should be ordinarily given in this type of case.

Two other errors that we believe occurred during the trial of this action need to be discussed briefly, as they may recur in the event of another trial.

The first of these arose during the cross-examination of C. M. Brumfield, one of the landowners, regarding his tax assessment listings for the years 1959 and 1960, which revealed the real estate involved in this action was assessed for $6200. He admitted he signed both returns but stated he did not swear to them. When he was asked to read to the jury the printed oath above his signature on each listing an objection was made and the trial judge stated: "It is not sworn to." Upon inquiry to the judge if Brumfield would not be required to read the oath, he responded: "He didn't take the oath."

■ If the assessment valuation of land is fixed by the owner himself, the list may be introduced in a condemnation case upon the theory that it is an admission against interest. On the other hand, when the value shown on the return is not one placed upon the land by the owner, the return is not admissible as evidence of the market value of the land. See Commonwealth v. Gilbert, Ky., 253 S.W.2d 264, 266, 39 A.L. R.2d 205.

■ In the instant case, the signatures of Brumfield appear immediately beneath the "Oath of Taxpayer" printed on each list. Since he admitted he affixed his name to each assessment list, he will not be heard to say that each return does not truly represent valuations fixed by him. It is immaterial whether he swore to the statements contained in them, because it has been held that when a taxpayer signs an assessment return, even though he does not make oath thereto, it may be introduced and considered as an admission against interest. See Commonwealth, Department of Highways v. Rankin, Ky., 346 S.W.2d 714, 717. It was improper, therefore, when the trial judge stated in the presence of the jury that the assessment lists were not sworn to. (Moreover, the record indicates the 1960 list was properly sworn to.)

The next alleged error directs our attention to the failure of the trial judge to rule on and admonish the jury in respect to objections by the Commonwealth to allegedly improper statements made during the jury argument by counsel for the landowners. In passing upon such objections and a request for an admonition, the trial judge would neither sustain nor overrule the objection.

■ For instance, when counsel for the landowners told the jury they could arrive at the just compensation due the condemnees only by considering both the "acreage taken" and the "damage done to the remainder by reason of the taking," the Commonwealth objected and asked for an admonishment upon the basis that the taking damage and the remainder damage do not represent the difference in the fair market value of land condemned before and after the taking. The trial judge simply stated to the jury: "You shall follow Instruction No. 3 in this matter." Another objection was made and an admonishment requested upon the ground that a Commonwealth witness did not testify at all to a certain sum of money in a particular instance. The trial judge merely responded: "The jury will remember the item in the verdict and follow the instruction."

It was the trial court's duty specifically to sustain or overrule any objections made during the trial and, if an objection was sustained, the jury should have been admonished regarding it, if such a request

was made. The court, in effect, left it to the jury to determine whether or not the objections interposed by the Commonwealth should have been sustained or overruled. This oblique practice of not passing upon and resolving a point raised and merely stating to the jury that they should try the case according to the testimony introduced or the instructions submitted has been consistently condemned by our opinions. See Brandenberg v. Addison and Brandenberg's Ex'r v. Addison, 221 Ky. 442, 298 S.W. 1091; Cincinnati, N. O. & T. P. R. Co. v. Martin, 154 Ky. 348, 157 S.W. 710.

 It is vigorously maintained that the verdict in this case is palpably excessive for the reason that it is not supported by evidence of probative value. In our opinion the award of $67,000 for 22.9 acres of unimproved farm land, or $2925 per acre, cannot be factually sustained. The attempt to support these figures, on the one hand, on the theory that the land taken was suitable for a prospective subdivision must fail. As we have pointed out, there is no substantial proof in the record that such a scheme of development was likely in the foreseeable future. On the other hand, the landowners, in their improvement of their land, indicate definitely they have always considered its best use to be that of a stock farm. They have cleared off the brush, constructed farm buildings, fertilized the soil, sowed grass seed, built stock scales, erected fences, and provided feed troughs and stock shelters. Furthermore, the farm is eight miles distant from the center of population of the county, and lies in a section of Boyd County where all the land is devoted exclusively to agriculture or stock raising.

We have heretofore stated that all the witnesses of the landowners, in part, based their estimates of the difference in the before and after value of the property on a false premise, namely, upon an assumed loss of access of the farm to Ky. 180 as reconstructed. The evidence indisputably discloses there is no such loss of access.

Thus, the erroneous admission of incompetent testimony in behalf of the landowners, timely objected to but allowed to be considered, had a prejudicial effect and afforded an improper evidentiary basis for the verdict. Under such a state of facts, we must hold that the verdict is palpably excessive for the reason that no foundation exists for the high values set in behalf of the landowners. See Commonwealth, Department of Highways v. Darch, Ky., 390 S.W.2d 649; Commonwealth, Department of Highways v. Gearhart, Ky., 383 S.W.2d 922; Commonwealth, Department of Highways v. Williams, Ky., 383 S.W.2d 687; Commonwealth, Department of Highways v. Tyree, Ky., 365 S.W.2d 472; Commonwealth, Department of Highways v. Lyons, Ky., 364 S.W.2d 336.

Other alleged errors are urged for reversal of the judgment but we deem it is unnecessary to consider them because we believe that they will not recur if there be another trial of this action.

Wherefore, the judgment is reversed and the case is remanded for further proceedings consistent with this opinion.