## KENTUCKY WATER SERVICE CO., Inc. v. GIBBS et al.

Court of Appeals of Kentucky.
March 20, 1951.

As Modified on Denial of Rehearing
May 1, 1951.

Percy Brown, Jr., Louisville, Robert F. Matthews, Shelbyville, Ogden, Galphin & Abell, Louisville, for appellant.

Bernard B. Davis, Shelbyville, for appellee.

HELM, Justice.

This action was instituted by appellant to condemn an easement for use in construction of a reservoir over 31.1 acres of land lying along Clear Creek in the back part of a 262.76-acre farm owned by appellees. In the circuit court a jury awarded appellees "the sum of $10,885 for the land taken, * * * the sum of $15,000 for the damage to the remainder of the farm, and $1520 for fencing," a total of $27,405.

Here appellant urges: (1) The verdict of $15,000 for resultant damage to the 231.66 acres remaining after condemnation of the 31.1-acre easement is excessive and not supported by the evidence; (2) the verdict of $1,520 damages for fencing is excessive and is not supported by the evidence; and (3) the trial court erred in admitting incompetent evidence. Appellant did not appeal from the amount allowed for the taking of the 31.1 acres.

The farm is located on the Shelbyville-Eminence Pike, about 1½ miles north of Shelbyville. It has a frontage on the pike of about one-half mile and extends back about four-fifths of a mile. Clear Creek flows across the northwest back part of the farm. The easement condemned cuts off a 23.7-acre tract, the northwest portion of the farm, from the remainder of it, and appellees now have no practicable means of access to this tract. There were no improvements on the 23.7 acres or on the 31.1 acres. A map of the farm outlining the 31.1-acre easement and the 23.7-acre tract is a part of the record.

Appellant is engaged in furnishing water to the City of Shelbyville. Shelbyville has been running short of water each summer. As a result, appellant agreed to build an additional reservoir. After surveys it decided to do this by building a dam across Clear Creek on the farm of Charlie Turner, which adjoins the farm of appellees on the west. The dam, 17½ feet high, causes the water to back up over the property of appellees, covering not only the bed of Clear Creek but 9.1 acres of bottom land on the northwest side of Clear Creek.

The farm is rectangular in shape. The reservoir, or lake, through it has a maximum depth of 17 or 18 feet, and is from 300 to 500 feet in width. All of appellees' bottom land was on the west side of Clear Creek. This tract was valuable for raising corn and tobacco. The farm before the taking was used chiefly for grazing, livestock raising, corn and tobacco. It had a tobacco base of 12.7 acres. Appellees had "a lot of livestock, cattle and hogs." The 23.7 acres join the lands of Charlie Turner. The remaining 208 acres of the farm east of the creek has no "low bottom" land. It is valuable for grazing and livestock raising. The farm is well improved, the improvements being ample for the original 262.76 acres.

For appellees it was testified that the farm, "one of the best in Shelby County," was worth from $300 to $350 an acre before the taking. After the taking, the remainder was worth from $13,880 to $15,000 less. Before the taking the "creek bed and bushes" embraced 22 acres. Appellees had 32.8 acres of tillable land beyond the creek on the west side. Lester Gibbs, who had cultivated this farm for 16 years, stated that the bottom land on the west side was worth twice what the "upland" is worth "because you can work bottom land practically every year and * * * you have to rotate upland." Other witnesses for appellees placed the value of the land west of the creek before the taking at $300 to $400 an acre. After the taking they say the land west of the creek was worth from $200 to $300 less an acre. The tax assessor gave the assessment of the farm as "value of land, $30,150; value of improvements, $7,500." He says the present assessment is about one-third of the true value of the property.

Appellees, in support of their estimate of $15,000 resultant damages, give the factors and elements going to make up this damage as follows: The 23.7 acres now virtually inaccessable, was all tillable and included the best land on the farm. It is worth from $200 to $300 less an acre than it was before the taking. The 31.1 acres taken by the easement includes all of the creek with its running water and shade, valuable and necessary assets to a livestock farm. The farm before the taking had ample improvements. Now that 54.8 acres have been taken from the farm unit, it is over-improved so that the improvements lose a proportionate part of their profitable utility. They point out that appellant was granted, in connection with the construction, operation, repair, maintenance, patrolling, flooding and storage of water for its water system, the right of ingress and egress upon and over the lands of the appellees, and "the right and privilege to trim any trees, brush or branches located in such proximity to the easement" as "might fall into the reservoir." The rights of appellant do not guarantee appellees access to the water of the lake, it being provided that appellees shall have the right to use the remaining land "for any purpose which will not interfere with the operation and management of the water system." They say the farm cannot be operated as a large-scale stock

farm with cattle using the water and shade because there will not be any shade, and cattle cannot stand in a reservoir many times "deeper than over their heads." There is a "bluff" along the east side of the lake so that it is deep on that side.

Appellant probably will not exercise often its right of ingress and egress over the lands of appellees, but this is a burden upon the land and lowers the market value of the farm. Tennessee Gas Transmission Co. v. Million, 314 Ky. 137, 234 S.W.2d 152. The right to trim trees is likewise a burden, but not a great burden on the land. Appellant, in its brief, suggest that appellees may use the reservoir for watering their livestock, but appellant has the right to discontinue this at any time.

A chief complaint is that the value of the 23.7-acre tract has been greatly reduced. This is obviously true because the tract does not adjoin anyone except Mr. Turner and he will be able to buy it at a distress price. An even more serious complaint is the taking of Clear Creek which formerly flowed from the northwest corner of the farm along the northern boundary some 1,557 feet, then in a southwesterly direction in a "U" shape through the farm to the land of Charlie Turner. This stream and the trees along it furnished water, and in the summer, shade for all of the livestock on the farm. It "was the key field of the whole farm." Now with the water impounded in the lake, appellees are practically, and may be entirely, cut off from the use of the lake for their livestock. This loss of use of water and shade is the basis for a substantial resultant damage to the remainder of the farm. The amount allowed for resultant damages is liberal. A majority of the members of the Court, not including the writer, do not believe that it is excessive.

The amount allowed for fencing, the second item complained of, is $1,520. The proof shows that the course of the fence is irregular, and so more expensive. The testimony is that the fencing will cost from $2 to $5 a rod; the number of rods required is from 287 to 380. On the basis of this testimony, the amount allowed is also liberal but we are unable to say that it is excessive.

Testimony was introduced to show that fishermen using the lake might trespass upon appellees' remaining land. This testimony was speculative, improper, and should have been excluded, but under all the facts and circumstances of this case we do not believe it was so prejudicial as to require a reversal.

The jury, some of whom no doubt were farmers, viewed the premises after hearing the testimony. They saw and heard the witnesses and were, by seeing the premises, able to evaluate the testimony of the witnesses. Cases of this character are peculiarly for the jury.

The judgment is affirmed.