## KENTUCKY WATER SERVICE CO., Inc. v. BIRD et al.

Court of Appeals of Kentucky.
March 23, 1951.

Robert F. Matthews, Shelbyville, Ogden, Galphin & Abell, Percy Brown, Jr., Louisville, for appellant.

Bernard B. Davis, Shelbyville, for appellees.

SIMS, Justice.

This is one of three condemnation suits arising from the taking of lands for a reservoir to supply water to the City of Shelbyville. It is a companion case to Kentucky Water Service Co., Inc., v. Gibbs, Ky., 239 S.W.2d 62, as well as the

same company against Clark, this day decided, Kentucky Water Service Co., Inc., v. Clark, Ky., 239 S.W.2d 66. The facts, issues and law involved here are but slightly different from those involved in the other two cases, hence it will not be necessary to discuss them in full as in most instances a reference to the Gibbs opinion will suffice.

P. C. Bird and wife owned a tenant farm of 100.9 acres located on the east side of Burk's Branch Pike about two and a half miles north of Shelbyville. It has a frontage of a half mile on the pike and extends back therefrom about seven-eighths of a mile. Clear Creek flows across the back of the farm.

The company condemned 25.3 acres of the Bird farm at the time it condemned 16.8 acres of the Clark farm. The impounded waters also cut off 13.2 acres of the Bird land from the rest of his farm in the same manner it cut off 6.4 acres of the Clark land. The company admits Bird has no access to this 13.2 acres. The map shows the 25.3 acres condemned here is a long narrow strip which takes in almost the entire southeast portion of the farm. Then a "neck" of the 25.3 acres condemned extends about half way across the middle of the farm. The 25.3 acres condemned and the 13.2 acres cut off constitute 38.5 acres, which is about 38% of the farm. A glance at the map filed in the record shows the Bird farm was so cut up by the condemnation that the resultant damages to it far exceed such damages to the Gibbs and Clark farms.

A jury awarded Bird $8,855 for the 25.3 acres taken; $6,813 for resultant damages to the remaining 75.6 acres and $1,124 for 281 rods of fencing.

■ The fencing allowance at $4 per rod is the same given in the Gibbs and Clark cases, and the company makes no serious complaint as to this item. The $8,855 for the 25.3 acres actually flooded amounts to $350 per acre, the same sum allowed in the other two cases. As the Bird farm is in the same neighborhood as the Gibbs and Clark places and as the land flooded on it was also bottom land of the same character and value as that flooded on the other two farms, we feel we must affirm the judgment here on this item since we upheld such a judgment in the Gibbs and Clark cases.

■ The resultant damages in this case were $6,813 to 75.6 acres, which in round numbers is $90 an acre. This is $25 per acre more than was allowed as such damages in the other two cases and the company strenuously insists the figure is excessive. But as pointed out above, the shape of the 25.3 acres condemned here was such that its taking resulted in much greater damages to the remaining land than were the resultant damages to the other two farms. We regard $90 per acre damages in this case to be lower than the $65 per acre allowed for the resultant damages in the Gibbs and Clark cases.

The same argument is made here relative to the loss of stock water as was made in the Clark case; to-wit, Bird's stock will have access to the impounded waters and that it was error to permit testimony to be introduced as to Bird's loss of stock water. What was written in the Clark opinion on this item is likewise applicable here and need not be repeated.

■ The company complains the court erred in permitting Bird to testify his gross receipts from this farm for the five year period from 1944 to 1948 were $700 per acre. The company insists the measure of damages in a condemnation suit is the fair market value of the land taken and the diminution of the fair market value of the remainder of the tract, but the damages must not exceed the difference in the fair market value of the entire tract immediately before and the fair market value of the remainder immediately after the taking of the land, citing Com. v. Combs, 244 Ky. 204, 50 S.W.2d 497. True, this is the correct measure of the damages. However, we know of no better way to ascertain the fair market value of land than to learn its gross production—but not the profits made on it. The first thing a prospective purchaser of a farm wants to know is what the land will produce. Usually, the production is measured in

crops, such as so many bushels of corn, wheat or so many pounds of tobacco to the acre. But the production may as well be measured in dollars as in crops grown, since they are reduced to dollars. We think this testimony was competent as one of the elements to consider in fixing the fair market value of the farm. 18 Am. Jur., Eminent Domain, § 345, p. 988; City & County of Denver v. Quick, Col., 113 P.2d 999, 134 A.L.R. 1120.

█ The question as to incompetent testimony relative to fishermen trespassing was disposed of in the Gibbs opinion where we held it was incompetent as being speculative. We there said, and repeat here, we do not believe under the facts and circumstances of this case that this testimony was so prejudicial as to require a reversal of the judgment.

The judgment is affirmed.