**COMMONWEALTH of Kentucky, DEPART-
MENT OF HIGHWAYS, Appellant,**

v.

**Boyd P. PRATER et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 20, 1964.

John B. Breckinridge, Atty. Gen., William A. Lamkin, Asst. Atty. Gen., Frankfort, Reed D. Anderson, Madisonville, for appellant.

Ralph N. Walter, Nickell & Walter, West Liberty, for appellees.

MONTGOMERY, Judge.

The Commonwealth of Kentucky, Department of Highways, appeals from a condemnation judgment in favor of Boyd P. Prater and his wife for $14,000 for land taken and $4,000 for damages to the remaining property. This case was tried prior to Commonwealth v. Sherrod, Ky., 367 S.W.2d 844. Appellant urges that the trial court erred in refusing to strike testimony because it was based on irrelevant factors and that part of the verdict is not supported by proof.

Appellees' witness, Custer Jones, testified on cross-examination as follows:

"Q 12    Now what is your definition of market value?

"A        What it costs?

"Q 13    What is your definition of market value?

"A        Well an acre of land that will raise a thousand dollars worth of tobacco each year will be a basis to start on.

"Q 14    Then you are basing your opinion on what this land produces every year?

"A        I base my opinion on what it will produce and an acre of ground that will produce a thousand dollars worth of tobacco each year is valuable land, and there is lots of it in

Morgan County and that is some of it over there.

"Q 15 That is what you base your opinion on?

"A Yes, Sir.

"Q 16 And what is the basis of this $22,000. value?

"A Well that and the bottomland and the hill, all of it together, I base it on that and other connections with it."

Appellant says that Jones' testimony should be stricken because he based his evaluation on the productivity as tobacco-raising land. Evidence of productivity based on actual income, when produced by the landowner, has been condemned. Commonwealth v. Eubank, Ky., 369 S.W.2d 15.

In the Eubank case testimony by the landowner concerning the average annual farm income from tobacco, milk, and calves over a five-year period was condemned as a basis for the value to be placed on the farm. In that opinion so much of Kentucky Water Service Co. v. Bird, Ky., 239 S.W.2d 66, as was inconsistent was overruled.

On direct examination Jones had testified that he had lived in the county all of his 84⅔ years; that he had been a "farmer, sawmill man, banker, merchant, most everything else"; that he had had 33 years' banking experience, mostly as cashier and president of a bank located within four miles of the property taken; and that he owned land in every ASC District in the county. He further testified in detail concerning his knowledge of the Prater lands, including the types, the terrain, the improvements and their condition. He was then asked to and did fix values before and after the taking, based on his experience in buying and selling lands and on his knowledge of property values.

The testimony concerning the value of tobacco land was given in partial explanation of Jones' understanding of the meaning of "market value." A further reading of Jones' testimony on cross-examination shows that while he considered the tobacco acreage evaluation, he also considered other relevant factors. His answer giving the basis of the $22,000 evaluation was " * * * that (referring to the tobacco land) and the bottomland and the hill, all of it together, I base it on that and other connections with it."

Actually the reference to $1,000 of tobacco per acre may have been conservative in the light of the then current generally increased monetary returns per acre due to higher tobacco prices, increased use of fertilizer, and better farming methods. The reference to the value of tobacco land productivity was erroneous, although an inadvertent one to a commonly accepted production standard of rural tobacco land. Under the circumstances it is not considered prejudicial.

So far as Jones' understanding of the term "market value," he probably could not have defined it. On the other hand, from his knowledge and experience of property and sales of property, the testimony leaves little doubt of his ability to determine and state the market value of farm land in Morgan County.

Further, there is no merit in the objection that there is no evidence to support the verdict of $4,000 as damages to the remaining land. James Henry Finch testified to an evaluation of $5,100, based on $3,600 for 60 landlocked acres with $1,500 added for an acre of level land. The award of $4,000 was within this evaluation.

Judgment affirmed.