**COMMONWEALTH of Kentucky DEPARTMENT OF HIGHWAYS, Appellant,**

v.

**R. M. HEATH et al., Appellees.**

Court of Appeals of Kentucky.

March 2, 1962.

John B. Breckinridge, Atty. Gen., H. D. Reed, Jr., Asst. Atty. Gen., Leslie D. Aberson, Lexington, Atty. for Dept. of Highways, for appellant.

Clyde E. Reed, Frankfort, for appellee.

MOREMEN, Judge.

Appellant, Commonwealth of Kentucky, Department of Highways, has appealed from a judgment of the Franklin Circuit Court in which appellees, R. M. Heath and others, were awarded the sum of $16,370.00 in a condemnation action instituted by appellant.

In connection with the construction of a new highway, known to the record as I–64, a limited access highway, appellant condemned a strip of land consisting of 20.42 acres from appellees' farm. The farm contains approximately 164 acres and is situated about 4½ miles from Frankfort on the west side of Cardwell Lane. The condemned strip bisects the farm and leaves a 31 acre tract on the south side of the new road and 113 acres on the north side. Most of the improvements are on the north portion and consist of a main house of eight rooms with customary facilities, and two other smaller buildings designated as tenant houses, a dairy barn in good condition with stanchions for twenty milch cows—and

other smaller improvements. On the 31 acre tract on the south side stands the tobacco barn with capacity to hold six acres of tobacco. The farm also had numerous fences which divided it into pasture, hay, meadow and crop land. This was a good farm on a blacktop road and in a good neighborhood. The land itself is of the type known as the "Elk formation to the Lexington Highbridge and is Lexington limestone"—the kind of farm we suppose that is known as a "bluegrass farm."

Appellant contends: (1) That the verdict was excessive and unsupported by sufficient evidence; and (2) The circuit court erred in permitting appellees to introduce evidence of net profits from the operation of the farm. For these reasons appellant asks reversal.

■ Competent witnesses were introduced by each party who expressed an opinion as to the value of the farm before the right of eminent domain was exercised.

The average of the estimates given by witnesses offered by the owners was $49,350.00, or $300 per acre. Thus their valuation of the 20.42 acres permanently taken was $6,126.00.

The average of the estimates given by witnesses offered by the Commonwealth was $34,500.00 or $175 per acre. Thus their valuation of the 20.42 acres permanently taken was $3,573.50.

The average of the two valuations is $4,849.75.

The jury evidently used this last average in reaching their award of $4,872.00. Perhaps the small extra amount ($22.25) was intended as compensation for the use of the temporary easement. In any event, the award was well under the valuation placed upon the strip by competent witnesses and was not excessive.

The jury awarded the sum of $11,498.00 as damages to the remainder of the property. Here again they seem to have obtained an average from all the testimony and the amount fixed was well under an amount which the evidence could have supported.

Appellee and the witnesses introduced in his behalf gave an average estimate of $15,312.50 as damage to the remainder. The average of the estimate given by the Commonwealth's witnesses was $5,762.50, so the amount of the award was just about $1,000 over the average of the figures of each set of witnesses.

In connection with damages to the remainder we must remember that originally this was a farm of approximately 164 acres and the proof indicates that it had been developed (Heath had been county agent for many years) as a cohesive unit with each portion of the farm devoted to the use for which it was best suited. Water was not a problem because there was a small but adequate pond situated near the tobacco barn, a small creek running across a portion of it and a non-failing spring. However, the farm was broken up into two tracts which for farm purposes were practically non-accessible to each other. Because of the construction of the new highway, water became a problem. The spring was located on the land which was condemned. Some attempt was made by the Department of Highways to save this spring and conduct the water to the 113 acre piece, but apparently this attempt was unsuccessful because appellee Heath testified that no water from the spring was coming on his property at the time the case was tried and none had flowed the summer and fall before. There was testimony to the effect that a new tobacco barn was required to be built on the 113 acre tract and that the entire farm operation would have to be changed. There was also testimony to the effect that the 113 acre tract was over-improved since there was no longer need for the tenant houses—and it was the opinion of several of the witnesses that it would be difficult to get a desirable tenant to operate the farm in its present condition.

Appellant insists that the rule is well established in Kentucky that the amount of

damages is limited to the difference between the fair market value of the property immediately before the taking and the fair market value immediately thereafter and if a witness does not testify as to the value thereafter—if he knows what the after value is—it is impossible for the jury to find damages without such information. This contention is based upon the fact that some of the witnesses, but not all of them, failed to give a final conclusion as to the value; for instance, Mr. Edmond Powers testified:

"Q. Is the farm worth half as much, more than half or less than half since the taking? A. Well, the larger piece I would say would be damaged a third anyway. The smaller piece more than that.

"Q. Let us take the 31 acre tract that was severed on the south side. Before the taking it was worth $300.00 an acre, and that would be about $9,300.00. What in your opinion is the damage to the 31 acre tract by reason of the taking? A. I would say it was cut in half.

"Q. That would be about $4,500.00? A. I just don't know what you would do with it."

Mr. Powers was not asked to give his totals but we believe the jury had little difficulty in obtaining the totals. As shown by the discussion above, they seemed to wield sharp pencils when it came to figures.

Mr. H. K. Gayle testified in similar fashion.

Mr. Charles A. Julian, after placing acreage values, testified that the 113 acre tract and the 31 acre tract had been damaged at least fifty per cent, while Mr. Hugh Moore Sr. placed a twenty-five per cent depreciation on the two pieces.

Mr. Ambrose Dudley testified as follows:

"Q. Based upon your knowledge of the farm, the production record of the farm and comparable sales, did you form any opinion as to the fair and reasonable market value of the farm as of December 1, 1958? A. Yes, I did.

"Q. Assuming that the farm was being sold by someone who wanted to sell it—a willing seller and a willing buyer, Mr. Dudley, what in your opinion was the fair and reasonable market value of this farm immediately before the taking of a portion of it by the Highway Department? A. The value on the farm, $41,000.00.

"Q. How much is that per acre? A. That is $250.00 an acre.

"Q. And what in your opinion is the value of the remainder after the taking? A. $21,000.00"

The jury would have been well within their rights to base their conclusion upon the testimony above quoted but, as we have pointed out, even if the answers of the other witnesses were not in the best possible form, still the jury was able to obtain the proper form by simple arithmetic.

■ After consideration of the entire record we have concluded that we should not substitute our opinion for that of the jurors who apparently understood the testimony given very well and, in addition, viewed the premises before returning their verdict.

■ Finally appellant insists that the court erred in permitting appellees to introduce evidence concerning diminution in the amount of net profits from the farm after the taking. It is true that in Kentucky Water Service Co. v. Bird, Ky., 239 S.W.2d 66 we held that it was permissible to introduce evidence of the gross profits of a farm because in that way the farm's productivity might be gauged and measured in dollar value. It was indicated in the same opinion that evidence as to net profits was not acceptable. However when the whole record is considered and it sustains the jury's verdict we are forced to the conclusion that

the introduction of such evidence was not prejudicial and the judgment should not be reversed because of this one small, and we thing inconsequential, error.

The judgment is affirmed.