**EAST KENTUCKY RURAL ELECTRIC CO-OPERATIVE CORPORATION, Appellant,**

v.

**John RAND et al., Appellees.**

Court of Appeals of Kentucky.

June 1, 1962.

Ralph Mitchell, Shelbyville, for appellant.

James F. Thomas, New Castle, for appellees.

PALMORE, Judge.

The condemnor appeals as excessive an award of $4,100 for an electric transmission line easement 100 feet in width extending a distance of 1799 feet across a 198-acre tract of farm land in Trimble County.

The terms of the easement are the ones usually involved in right-of-way acquisitions by rural electric cooperatives. Five poles, one of which is supported by anchors and guy wires, have been placed on the tract. One of them is located in a long narrow tobacco field which is crossed laterally by the wires, and this tobacco field is the nub of the case.

The tract in question has a tobacco base of 7.65 acres. All of the allotment is grown in a single field 175 to 200 feet wide and 1700 to 1800 feet long. This field, which originally produced 900 to 1000 lbs. per acre, has been improved and built up over a period of 20 years to a high state of fertility and now averages between a ton and 2500 lbs. per acre. It is irrigated through a system of pipes and sprinklers running from a lake some 300 feet distant. The owner usually has the tobacco crop sprayed by airplane two or three times during the growing season. The pilot who has done this job for the past several years testified, in effect, that he did not think it would be practicable to spray the field by plane with the power line running across it. Hand spraying is not feasible in view of the size of the plants grown in this particular patch. Without spraying the yield would drop 20% to 25%, or about 500 lbs. per acre. At an average of 60¢ to 65¢ per pound, the gross proceeds would drop well over $2,000 per year. On the other hand, moving the tobacco production to another location on the farm would, according to the owner and his witnesses, result in equal loss for two reasons, (1) that he does not have another suitable field close enough to the lake to permit satisfactory irrigation, and (2) that it would require a number of years to develop another field to a comparable state of fertility.

All of the testimony relating to the probable effect on tobacco production went uncontradicted. There was no evidence to refute the pilot's opinion that the presence of the pole and wires probably would make it impracticable to spray the field by air. Whatever misgivings we may privately en-

tertain, certainly this testimony is not so patently unreasonable as to justify our questioning its credibility.

The owner testified that his land as a whole had a reasonable market value of $75,000 immediately before the taking of the easement and $67,000 thereafter, a difference of $8,000. A witness engaged in the real estate business gave his opinion that the values before and after were, respectively, $75,400 and $70,000, rounding the difference to $5,000. Both of these men attributed the diminution almost exclusively to the interference in tobacco production, and consequent loss of revenue from the land, likely to be occasioned by the placement of the pole and wires on the tobacco field. Other witnesses substantiated their opinions and estimates relating to the cultivation and sale of tobacco.

The valuation witnesses used by the condemnor in circuit court were the three commissioners who had served in the county court proceeding and had assessed the compensation and damages at $540. On the witness stand all three were either reluctant or too modest to claim any real qualification to express an opinion on land values in Trimble County. None of them had given due consideration to the possible obstruction of spraying operations. Their testimony was not of a quality likely to carry weight with a jury.

There being no two cases alike, it is often said that "there is no definite yardstick which a court may apply in deciding whether damages are excessive in a given case." East Kentucky Rural Electric Co-op Corp. v. Erwin, Ky.1958, 310 S.W.2d 554; Tennessee Gas Transmission Co. v. Teater, Ky.1952, 252 S.W.2d 674. Though it is obvious that the jury system shows to its least advantage in condemnation cases, they are better tried in the court house than here. We have little doubt that after the award in this case has been paid human ingenuity will be able to contrive ways and means to spare this tobacco patch from the disastrous consequences that appeared so inevitable during the trial. But the time to prove it has passed, and we are not the right witnesses anyway. The evidence in this record gives us no reasonable basis to say the verdict was flagrantly excessive.

Judgment affirmed.