**COMMONWEALTH of Kentucky, DEPART-
MENT OF HIGHWAYS, Appellant,**

v.

**J. W. HESTER et al., Appellees.**

Court of Appeals of Kentucky.

Dec. 8, 1967.

---

Robert Matthews, Atty. Gen., H. C. Smith, Asst. Atty. Gen., Dept. of Highways, Frankfort, C. V. Sanders, Shepherdsville, Mark Anderson, Middlesboro, for appellant.

Thomas B. Givhan, Shepherdsville, for appellees.

DAVIS, Commissioner.

In this condemnation suit right-of-way for the relocation of Kentucky Highway 61 south of Shepherdsville is being acquired. The new route supplants a low, one-lane railroad underpass which had been subject to flooding. The jury awarded a total of $24,500 to the appellees for the difference in before and after values and $300 for four temporary easements used during construction. The Department appeals asserting that the verdict is not supported by the evidence, inadmissible evidence was admitted, that the verdict is excessive, and that evidence for appellees lacked sufficient probative value to support the verdict.

Prior to the taking, the property contained about 115 acres and was used for farming purposes. It is situated about a mile south of Shepherdsville and has frontage of about 875 feet along existing Ken-

tucky Highway 61. That frontage will not be disturbed by the taking. The tract lies somewhat in the shape of a boot, with the toe fronting on existing Highway 61 and the foot extending westwardly to the existing right-of-way of the L & N Railroad tracks. On the west side of the railroad, the heel of the boot lies in the southwest corner of the tract with the leg of the boot extending northwardly along the railroad right-of-way. The tract situated east of the railroad and fronting on the old highway contained 26.9 acres and had on it the residence and other farm improvements, which are not disturbed. The larger tract west of the railroad contained 87.6 acres and was unimproved. The right-of-way being acquired embraces a total of 8.64 acres, is 2900 feet long, and ranges in width from 100 to 200 feet according to the height of the fill. The new road will enter the property at the northern boundary of the 87.6-acre tract and extend down the leg of the boot in a southerly direction upon a curve bearing to the east until it crosses the railroad and traverses the southwest quadrant of the 26.9-acre tract for a short distance. Since the new highway will pass over the railroad, a fill is required in its construction. At the point of entry on the north side of the property, the fill will be about five feet and it will range to about thirty-two feet where the bridge over the railroad will be. The fill gradually descends as the right-of-way leads southeastwardly but will be about twenty feet as it leaves the south property line of the 26.9-acre tract.

The Department introduced two appraisal witnesses who expressed the view that the highest and best use of the Hester property was agricultural before and after the taking. According to these two witnesses, the before value ranged from $57,500 to $60,000 and the after value from $47,460 to $49,500, making respective differences of $10,040 and $10,500. One of these witnesses assigned $8 as the value of the temporary easements. For the landowners the witnesses presented two sets of before and after values, one based on agricultural usage and the other upon development for subdivision or commercial purposes.

As to the farm values; the witnesses for the landowners expressed before value opinions ranging from $45,000 to $50,000 and after value opinions from $20,000 to $14,000, reflecting differences ranging from $25,000 to $36,000 plus an estimate of $40 for the temporary easements.

In assigning values based upon subdivision or commercial use, the landowner and his witnesses expressed before value opinions extending from $104,800 to $114,000 and after values of $45,000 to $60,000, for differences between $54,000 and $64,000.

In its verdict the jury fixed the before value at $55,000, the after value at $30,500, for a difference of $24,500 and allowed $300 for the temporary easements comprising its verdict of $24,800.

The first point advanced by the appellant pertains to the $300 awarded for the temporary easements. It is pointed out that no evidence from either side supported that portion of the verdict. This is conceded by the appellees who urge that if any reversal is granted it be merely for the purpose of retrial of the amount to be awarded for the temporary easements. The view we have of the case makes it unnecessary to discuss this point further.

The Department attacks the trial court's rulings in admitting evidence relating to the potential use of the property for subdivision purposes and pitches its argument on the premise that there was no evidence that the land was being used as a subdivision and no evidence of any existing plan to subdivide it or that the owners expected to subdivide it. In support of its position, the Department cites Com., Dept. of Highways v. Riley, Ky., 388 S.W.2d 128; Com., Dept. of Highways v. Gearhart, Ky., 383 S.W.2d 922; Com., Dept. of Highways v. Creason, Ky., 402 S.W.2d 426; and Sloan v. Com., Dept. of Highways, Ky., 405 S.W.2d 294. The cases relied on do

not sustain the position advanced by the Department. There was evidence that the property was suitable and adaptable for subdivision along with testimony tending to reflect a market potential in the area for such development. See Com., Dept. of Highways v. Rollyson, Ky., 415 S.W.2d 838, and the cases therein discussed pointing out "* * * that the potential for commercial or residential development may be significant even though the landowner had never thought of subdividing his property." Id. 415 S.W.2d 839. In this connection it should be observed that the property owners presented an overlay type map reflecting subdivision of a portion of the property into building lots. This was proper inasmuch as the jury understood that this was merely an example of a possible subdivision and not evidence of an actual one. See Com., Dept. of Highways v. Rhea, Ky., 386 S.W.2d 443.

The final assault on the judgment relates to claimed excessiveness and lack of probative value in appellees' evidence in support of the verdict. The comparable sales presented in evidence by the witnesses for both sides tend to discredit the values found by the jury. It will be recalled that 8.64 acres were taken and that the verdict for this (excluding the easements) is $24,500. This amounts to more than $2,800 per acre for the land taken. We recognize that the verdict does not and should not undertake to fix a per acre value of the land taken, but some significance may be found in contrasting the before and after values in light of such a computation. According to the landowner himself, the 115 acres had before value as a farm of $45,000, slightly more than $391 per acre, whereas the remaining 106 acres were valued by the owner at slightly more than $188 per acre. Thus, according to the witness the farm was reduced more than 50% by the taking of less than 8% of the entire tract. The jury's verdict which fixed the before value at $55,000 reflects a per acre value slightly in excess of $478, whereas its after value is a little more than $287 per

acre. Thus, it will be seen that the jury concluded that the farm's value had been diminished by just under 45% due to the acquisition of the right-of-way of just under 8% of the total acreage. In all this, it must be remembered that none of the improvements was taken. Although the new construction will divide the land so as to make accessibility to and from the front and back somewhat inconvenient, that situation already existed by reason of the railroad tracks bisecting the farm. Conceding that the jury properly found a difference in the before and after values of the farm, we are unable to fathom from the record any substantive basis for the enormity of that reduced value. Although the verdict is within the scope of before and after values referred to by witnesses, it strikes the court at first blush as being excessive and as appearing to have been given under the influence of passion or prejudice. We are unable to distinguish the case at bar from Com., Dept. of Highways v. Gibson, Ky., 401 S.W.2d 71; Com., Dept. of Highways v. King, Ky., 400 S.W. 2d 517; Com., Dept. of Highways v. George, Ky., 387 S.W.2d 580; and the cases which are therein cited and discussed.

We are bolstered in our view that the verdict is excessive in considering the fact that the present landowners purchased the entire tract about ten years before the taking for $26,400. No material improvement has been made of the property since that time. It is apparent that the market value has substantially increased since that purchase, as is reflected by the Department's own witnesses as well as by the witnesses for the landowners, but it is incredible that the taking of so small a portion of the land could now warrant the recovery of a sum nearly equal to the original purchase price while leaving nearly all of the property purchased.

We are not to be understood as approving the somewhat anomalous use of two sets of values by the appellees. It would appear that land could have only one highest and best use, or that it may lend itself to two

or more combinations of uses so as to produce the one highest market price—or two types of uses might be possible, either of which would realize the same highest price. In the final analysis there can be only one market value. But it seems impossible to credit testimony from the same witness who expresses "highest and best use" as a farm worth $45,000 and "highest and best use" as a subdivision worth $114,000. It is noteworthy that one of the owners testified that the "after value" (for subdivision) is $60,000—a sum greater than the jury found as the "before value" and about twice as much as the jury found as "after value." The appellant did not address any objection to permitting the witnesses to use a double standard, as such, although we feel that the confusion thereby occasioned is reflected in the high verdict. Cf. Com., Dept. of Highways v. Doolin, Ky., 411 S. W.2d 44.

The judgment is reversed for further proceedings consistent with the opinion.

WILLIAMS, C. J., and HILL, MILLIKEN, MONTGOMERY, and STEINFELD, JJ., concur.