**COMMONWEALTH of Kentucky, DEPART-
MENT OF HIGHWAYS, Appellant,**

v.

**Alma W. STOCKER, widow et al., Appellees.**

Court of Appeals of Kentucky.

Jan. 12, 1968.

Robert Matthews, Atty. Gen., H. C. Smith, Asst. Atty. Gen., Dept. of Highways, Frankfort, D. G. Lynn, Boehl, Stopher, Graves & Deindoerfer, Lexington, Phillip K. Wicker, Somerset, for appellant.

George T. Ross, John W. Palmore, Richmond, for appellees.

STEINFELD, Judge.

The Commonwealth condemned 11.75 acres and a temporary easement of the Stocker farm for the construction of a portion of the limited access Interstate Highway 75. In county court the appellees were awarded $24,550.00 and both parties appealed. The circuit court jury found that the owners were entitled to recover $76,-425.00. This appeal is from the judgment entered pursuant to that verdict. We reverse.

The Stockers were the owners of a gently rolling and all-cleared farm containing 197 acres. The principal improvements were a two-story frame residence, a tenant house, a silo, five barns, several small buildings and ponds.

There were 100 feet of frontage on the south side of Tate's Creek Pike. The northeast boundary was contiguous for approximately 1,500 feet to Baker Heights, a residential development within the city limits of Richmond, Kentucky. From there the farm extended generally westwardly over one mile to Goggins Ferry Road on which it fronted for approximately 1,450 feet.

The Commonwealth took a strip which ran in a north-south direction, was 300 feet wide and approximately 1,500 feet long. This divided the farm so that the tract adjoining Richmond and which fronted on Tate's Creek Pike then contained 120 acres and the western tract with frontage along Goggins Ferry Road then had 65.25 acres. No crossing of the new highway was provided. Almost all of the major improvements were on the 120 acre tract. On the part taken were a pond and small barn and on the 65.25 acre portion was a small barn. The evidence is conflicting as to the distance of travel between the remaining tracts. The Stockers say four miles but the Commonwealth claims only 2.75 miles.

Witness for both sides agreed that at least a major part of the farm was suitable for

development as a residential subdivision. Com., Dept. of Highways v. Rollyson, Ky., 415 S.W.2d 838 (1967). They stated their opinions concerning values:

### For the Commonwealth

| Witness | Before Taking Value | After Taking Value | Difference |
|---|---|---|---|
| R. W. Crabtree | $122,250 | $116,000 | $6,250 |
| M. L. Garrison | 146,000 | 136,900 | 9,100 |

### For the Stockers

| Witness | Before Taking Value | After Taking Value | Difference |
|---|---|---|---|
| James W. Stocker | $591,000 | $385,780 | $205,220 |
| Earl Baker | 591,240 | 452,500 | 138,500 |
| Caperton Burnam | 591,000 | 392,000 | 199,000 |
| Ballard Luxon III | 591,240 | 444,960 | 146,280 |
| Frank Congleton | 471,000 | 355,700 | 114,300 |
| Harry McCord | $2,500 to $3,000 per acre | $3,500 per acre east side, $500 to $600 per acre, west side | NO FIGURE |

The jury was instructed and returned its verdict according to the procedure directed in Com., Dept of Highways v. Sherrod, Ky., 367 S.W.2d 844 (1963) as follows:

| | Before Taking Value | After Taking Value | Difference |
|---|---|---|---|
| Jury | $375,000 | $298,875 | $76,425 |

Within the verdict was the value of the temporary easement in the amount of $300.00 which is not in dispute.

The Commonwealth claims the verdict of $76,125.00 is palpably excessive and should not stand, that it was for taking not quite ¹⁄₁₆ or less than 6% of the farm and represents over 20% of the $375,000.00 before value fixed by the jury. It notes that the only improvements taken were a pond and small barn while the remaining tracts retained the same access to and frontage on the roads that existed before the taking. It says that the 120 acres adjoining the Baker Heights Subdivision were not disturbed, that the least valuable part of the farm was that taken and that which remained on the far side of the new highway was substantially as before.

Although the owners admit that the value of the 120-acre tract was not adversely affected, they counter that a highway without a crossing will cut through the farm and that there will be a great distance of travel to get from one part to the other. They note that practically all of the improvements are on the 120-acre side and virtually none on the 65.25 acre tract. They forcefully argue that their witnesses were knowledgeable with respect to values and that their appraisals were accurate.

Mr. Stocker and other witnesses for the landowners using several sales in the vicinity as "comparables" stated that before the taking all of the land had an average value of $3,000.00 per acre and that afterwards the 120-acre portion on the east side of the new highway retained that same or acquired a greater value, but the land on the west side of that highway "was worth $500.00 an acre". The "comparable sales" ranged from $1,100.00 per acre to over $6,000.00 per acre. Earl B. Baker, Caperton Burnam and Frank Congleton, qualified experts (Commonwealth, Dept. of Highways v. Slusher,

Ky., 371 S.W.2d 851 (1963) and Bennett v. Com., Dept. of Highways, Ky., 417 S.W.2d 143 (1967)) said that after the taking the 65.25-acre tract (sometimes referred to as the 67 acre tract) was worth $500.00 an acre, a total of $32,500.00. Ballard Luxon III told the jury that the land on the west side of "the barrier is worth $500.00 an acre, or $33,955.00."

Courts, including ours, have used various formulas for determining whether an award should be disturbed as excessive or inadequate. It has been said that the record must show that the award was made as a result of bias, passion or prejudice. Com., Dept. of Highways v. Riley, Ky., 414 S.W.2d 885 (1967); Mississippi State Highway Commission v. Strong, Miss., 240 Miss. 756, 129 So.2d 349 (1961). In Riley we said:

"Nevertheless, jury verdicts on disputed questions of fact are not final or unassailable. The verdicts may be reviewed and upset where, as in the present case, the amount at first sight appears excessive and to have been rendered as a result of passion or prejudice."

Pennsylvania stated that it will not interfere unless the verdict is so excessive or so inadequate that the review of the trial court on motion to grant a new trial is a clear abuse of discretion or is shocking to the sense of justice. Vaughan v. Commonwealth, 407 Pa. 189, 180 A.2d 12 (1962). A Texas court held that the verdict must be so against the great weight and preponderance of the evidence as to be manifestly unjust. Roberts v. State of Texas, Tex.Civ.App., 350 S.W.2d 388 (1961). Jayson v. United States, CCA 5, 294 F.2d 808 (1961) decided that the ruling of the trial court will not be disturbed in the absence of a clear abuse of discretion in considering and passing upon the motion for a new trial. Com., Dept. of Highways v. Tyree, Ky., 365 S.W.2d 472 (1963) announced " * * * our power of review is limited

under this record to determining whether the testimony of the landowners' witnesses had sufficient probative value to support the verdict rendered." Also see Com., Dept. of Highways v. Doolin, Ky., 411 S.W.2d 44 (1967); and Neighborhood Oil Company v. Com., Dept. of Highways, Ky., 418 S.W.2d 424 (1967). We decided in Com., Dept. of Highways v. Dennis, Ky., 409 S.W.2d 292 (1966); Com., Dept. of Highways v. Brumfield, Ky., 418 S.W.2d 231 (1966) and Com., Dept. of Highways v. Osborne, Ky., 417 S.W.2d 530 (1967) that the testimony did not support the award and in Com., Dept. of Highways v. Collins, Ky., 409 S.W.2d 506 (1966) that based upon mathematical computations an award should not stand. In East Kentucky Rural Electric Co-operative Corporation v. Rand, Ky., 357 S.W.2d 890, 891 (1962) we wrote "There being no two cases alike, it is often said that 'there is no definite yardstick which a court may apply in deciding whether damages are excessive in a given case.' East Kentucky Rural Electric Co-op. Corp. v. Erwin, Ky., 1958, 310 S.W.2d 554; Tennessee Gas Transmission Co. v. Teater, Ky., 1952, 252 S.W.2d 674." We have used expressions that the verdict of the jury may not stand if the amount "shocks our conscience", or "at first blush" or "at first sight" is so excessive as to appear to have been rendered under passion and prejudice. Com., Dept. of Highways v. Muir, Ky., 412 S.W.2d 231 (1967); Com., Dept. of Highways v. Shirley, Ky., 409 S.W.2d 522 (1966); Com., Dept. of Highways v. Riley, supra; Com., Dept. of Highways v. Blincoe, Ky., 418 S.W.2d 731 (1967); Com., Dept. of Highways v. Hester, Ky., 421 S.W.2d 840 (decided December 15, 1967). Whitesburg, etc. v. Bates, Ky., 412 S.W.2d 225 (1967) said:

"A verdict will not be disturbed as excessive, unless it is given under the influence of passion or prejudice or in disregard of the evidence or the instructions of the court. CR 59.01. Commonwealth of Ky., Dept. of Highways v. Gearhart, Ky., 383 S.W.2d 922;

Salt River Rural [Elec.] Co-op. Corp. v. Thurman, Ky., 275 S.W.2d 780; Commonwealth, Dept. of Highways v. Rankin, Ky., 346 S.W.2d 714; Commonwealth, Dept. of Highways v. Tyree, Ky., 365 S.W.2d 472, and authorities there cited."

There has been no uniform standard. See cases cited in Kentucky Digest Volume 8, Eminent Domain, ☜150.

Discussing the problem now before us it was said in Orgel, Valuation under Eminent Domain, Volume 1, Section 130, page 558 that:

"The limits of reasonableness are usually fixed by the estimates of the opposing witnesses, since these estimates are in the nature of admissions by the respective parties. Accordingly, the courts have generally sustained awards falling within the range of the testimony and have reversed those falling outside these limits. But these are not invariable rules, for an award which is within the range of the testimony may nevertheless be unreasonable and an award which is either higher or lower than the opinion estimates may be justified by other evidence in the case."

From 27 Am.Jur.2d, Section 471, page 397 we quote:

"Ordinarily, a verdict or award in a condemnation case will be sustained if, and only if, it is within the range of the testimony of the amount of the value or damages. If there is any evidence to support a verdict or finding as to damages or compensation, the appellate court will not disturb it, unless it is clearly and palpably, or flagrantly, against the weight of the evidence; or unless it appears that the jury have committed gross and palpable error, or have acted under improper bias, influence, or prejudice, or have mistaken the rules of law stating the measure of damages, or have rendered a verdict so excessive

as to shock the enlightened conscience of the court."

In the work by Nichols on Eminent Domain, Volume 5, Section 17.3, page 112 it is said:

"Even in the face of conflicting evidence the court will generally refuse to set aside the report or verdict if there is evidence to sustain the amount awarded and such amount is not palpably inadequate or excessive."

The following is quoted from 30 C.J.S. Eminent Domain § 364, page 348:

"The appellate court will not substitute its judgment, opinion, or conclusion for that of the jury, commissioners, or trial court as to the amount of damages to be awarded; and it will not disturb the award because it seems to the appellate court, or because such court thinks or is of opinion, that the amount is inadequate, excessive, or extravagant, unless the amount is clearly, manifestly, or obviously excessive or inadequate, * * * or is so excessive or inadequate as to be unconscionable * * *".

Lewis, Eminent Domain, Vol. 2, Section 776, page 1377, states the rule as follows:

"In setting aside a report on the question of damages, the court will be governed by the same principles as obtain in the case of the verdicts of juries in common law suits.

Where there is evidence to sustain the verdict and the testimony is conflicting, the court ordinarily will not interfere on this ground alone: ([Louisville & N. R. Co. v. Ingram, Ky.] 14 S.W. 534) and especially is this the case where the commissioners or jury have viewed the premises.

To justify an interference on the ground that the damages are inadequate or excessive the case must be a very clear one and it must appear that the tribunal

has proceeded upon erroneous principles, or has been influenced by passion or prejudice, or has disregarded the evidence in the case."

■ The jury is the trier of the facts [Proctor v. Com., Dept. of Highways, Ky., 412 S.W.2d 252 (1967)] to determine what is just compensation in the constitutional sense. Sea v. Com., Dept. of Highways, Ky., 418 S.W.2d 766 (1967). It is not our prerogative under the constitutions to sit as an appellate jury or substitute our judgment for that of the jury. United States v. Tampa Bay Garden Apartments, CCA 5, 294 F.2d 598 (1961).

■ We believe that a more stable and better approach than we have used heretofore should be formulated. The right of the jury (under the law) to decide facts and the authority and duty of the trial court to review the findings of the jury must be recognized and respected. CR 59.01. Upon review, we must first determine whether the trial court erred in accepting or rejecting the verdict. Our next step is to decide whether the verdict is properly supported by substantive evidence of probative value. If the verdict lacks substantial support in the evidence then it must be set aside. Pierson v. Com., Dept. of Highways, Ky., 350 S.W.2d 487 (1961); Com., Dept. of Highways v. Cooper, Ky., 397 S.W.2d 47 (1965); Com., Dept. of Highways v. Allie, Ky., 391 S.W. 2d 385 (1965); Com., Dept. of Highways v. Cardinal Hill Nursery, Ky., 380 S.W.2d 249 (1964); Nelson v. Iowa State Highway Commission, 253 Iowa 1248, 115 N.W.2d 695 (1962). When the verdict is based upon substantive evidence of probative value it must be upheld even though we might prefer the opposite line of evidence or something in between. An exception would be in the case where the size of the verdict is so palpably excessive as to shock the enlightened conscience of the court, or when it is clear that it was the result of passion or prejudice. CR 52.01.

■ We recognize the latitude allowed by the statement "to shock the enlightened conscience of the court" for this is a relative term. We must not be shocked by what may appear to us to be an excessive or inadequate award unless the verdict is clearly so exorbitant or so small that obviously an unreasonably large and unjust enrichment, or grossly inadequate compensation, to the condemnee will be the result of sustaining the verdict.

■ The next contention is that error was committed when the circuit court, upon motion timely made, refused to strike the estimates of Frank Congleton who, the Commonwealth claims, considered income from the farm operation as a principal factor in computing his estimates. We do not consider the testimony of Congleton to be as contended by the Commonwealth. In making his estimates this qualified expert used various factors, all of which we have approved. The effect of his testimony with respect to anticipated income from the farm was in connection with his appraisal of the land for subdivision purposes and the length of time before which it is reasonably anticipated that its use for a subdivision might occur. He explained that a purchaser would consider how long he would have to hold the land and its productivity. City of Newport, etc. v. Turner Advertising, Inc., Ky., 334 S.W.2d 767 (1960). Also see Com., Dept. of Highways v. Smith, Ky., 358 S.W.2d 487 (1962). Such testimony, as distinguished from net income or the money income which a particular operation had created, is admissible. Com., Dept. of Highways v. Heath, Ky., 354 S.W.2d 752 (1962); Kentucky Water Service Co. v. Bird, Ky., 239 S.W.2d 66 (1951).

■ The attorney for the Commonwealth moved to strike the testimony of Congleton but not that he be required to revise his estimates and base them only on the factors which properly could be considered. We announced the correct procedure in Com., Dept. of Highways v.

Woolum, Ky., 415 S.W.2d 83 (1967); Com., Dept. of Highways v. Shaw, Ky., 390 S.W.2d 161 (1965) and Com., Dept. of Highways v. Rosenblatt, Ky., 416 S.W.2d 754 (1967). On the motion for new trial the Commonwealth stated that "the court erred in allowing the witness Frank Congleton, Jr., to testify as to the value of this farm based upon the income that could be derived from a farming operation pending complete development of the farm for residential or commercial uses * * *". For the reasons above stated and since counsel had failed to follow the procedure above referred to, the trial court did not abuse its discretion in refusing to sustain the motion for a new trial on the ground mentioned.

■ The Commonwealth says that Harry McCord who, over its objection was permitted to testify as to values was not a qualified witness. Since the case must be tried again and Mr. McCord may be called as a witness we think it appropriate that we decide this question. The Commonwealth relies upon Com., Dept. of Highways v. Slusher, Ky., 371 S.W.2d 851 (1963); Com., Dept. of Highways v. Taylor, Ky., 368 S.W.2d 732 (1963) and Com., Dept. of Highways v. Tyree, supra. For eleven years ending in 1965 this witness was in the subdivision and building business in the county in which the farm is located. He had purchased and sold many parcels of real estate and was informed with respect to the sales of a number of properties which he and other witnesses used in fixing values. There is no merit in this contention. See Com., Dept. of Highways v. Tyree, supra, and Com., Dept. of Highways v. Fister, Ky., 373 S.W.2d 720 (1963).

Considering all the proof properly admitted and applying the rules stated, we now seek to determine whether the trial court erred in accepting or rejecting the verdict of the jury. It was contended on the motion for a new trial that it was excessive. The commissioners appointed by the county court awarded $24,550.00 while the verdict of the jury, $76,425.00, was more than three times that figure. On a previous trial which had to be discontinued because of the illness of a juror, James H. Reynolds testified for the owners. He was not introduced as a witness on the second trial. His testimony is in the record before us on another point which we do not need to decide but we have examined it and found that for nineteen years he had been engaged as a professional real estate appraiser and that he "appraises farms for Equitable Life Assurance Societies for their loans". He expressed the opinion that before the taking occurred the "Fair market value for the 197 acres as a whole is $274,000 and that the fair market value immediately after the taking was $226,300, the difference being $47,700." We are somewhat fortified in our views by the foregoing valuation.

Each of the witnesses for the owners used as comparable sales parcels ranging in size from two to sixty acres. All admitted that they knew of no tract in the area containing 190 acres or more which had ever sold for more than $800.00 per acre. Witnesses Baker and Luxon stated that before the taking the entire tract had an average value of $3,000.00 an acre but that after the taking the 120 acre tract had an average value of $3,500.00 per acre. Witness McCord said that before the taking the land was worth $2,500.00 to $3,000.00 per acre but that after the taking the tract containing 120 acres was worth $3,500.00 per acre. From this testimony we must conclude that the smaller tracts have greater value than the larger tracts. It was admitted throughout that the taking of the land for, and the construction of the non-access highway, brought no enhancement in value to the land.

■ Another factor which we believe was not given proper consideration was the time anticipated for the development of all of the 197 acres as subdivision property. A Commonwealth witness expressed

the opinion that the demand for the development of the entire tract for a subdivision could not reasonably be anticipated in less than 25 years. No witness refuted that opinion. It is true that the witnesses for the Stockers testified concerning the development of and increase in size in Eastern Kentucky University and told of the residential development in and around the city of Richmond. Each of them bottomed their before taking appraisal on the adaptability and demand for this land in its entirety for residential subdivision purposes. "Our cases have consistently observed the rule that it is appropriate to admit testimony of the adaptability of property for particular uses, even though the property is not then being so used. However, the rule is subject to the qualification that if the land is reasonably adaptable to another use, there must be an expectation or probability in the near future that it can or will be so used." Com., Dept. of Highways v. Gearhart, Ky., 383 S.W.2d 922 (1964); Com., Dept. of Highways v. Siler, Ky., 411 S.W.2d 937 (1967). None of the witnesses were convincing that with respect to the entire tract "there was a reasonable expectation that in the near future it could have been divided into lots". Bowling Green-Warren County Airport Bd. v. Long, Ky., 364 S.W.2d 167 (1963); Com., Dept. of Highways v. Brumfield, Ky., 418 S.W.2d 231 (1966).

■ For the reasons expressed and following the formula for examination of the record announced in Com., Dept. of Highways v. Sheffer, Ky., 399 S.W.2d 709 (1965) we conclude that the motion for a new trial should have been sustained since the evidence did not support a verdict of the magnitude of the one rendered. Com., Dept. of Highways v. Bond, Ky., 391 S.W. 2d 692 (1965); Com., Dept. of Highways v. Burden, Ky., 388 S.W.2d 577 (1965); Com., Dept. of Highways v. Lovell, Ky., 405 S.W.2d 21 (1966); Commonwealth, for Use and Benefit of University of Ky., v. Coffee, Ky., 409 S.W.2d 166 (1966). We hold that it was an excessive award which we cannot permit to stand. Com., Dept. of Highways v. George, Ky., 387 S.W.2d 580 (1965).

The judgment is reversed with directions to grant a new trial.

WILLIAMS, C. J., and EDWARD P. HILL and MONTGOMERY, JJ., concur.

PALMORE, J., not sitting.