**LOUISVILLE GAS & ELECTRIC COMPANY, Appellant,**

v.

**Irvin DIEMER et al., Appellees.**

Court of Appeals of Kentucky.

June 27, 1969.

T. C. Carroll, Thomas L. Waller, Taylor, Pike & Waller, Shepherdsville, Gerald Kirven, Middleton, Seelbach, Wolford, Willis & Cochran, Louisville, for appellant.

Thomas B. Givhan, Shepherdsville, for appellees.

REED, Judge.

Appellant, Louisville Gas and Electric Company—the condemnor, appeals from an award to appellees, Irvin Diemer and his wife—the condemnees, of $7,175 by reason of diminution in the fair market value of the real property of condemnees as a result of acquisition by eminent domain proceedings of an easement 250 feet wide and occupying 2.3 acres across the northwest corner of a 123-acre farm. The easement is for the purpose of installation and maintenance of overhanging electric transmission lines. While the taking is not in fee simple, the landowners are precluded from locating any permanent structure within the area of the easement. The condemnor contends that the jury verdict on which the award is based was returned in disregard of the evidence and is excessive. We have concluded that we are unauthorized to disturb the award.

Each side to the dispute called two expert witnesses on the question of the market value of the property before and after the taking. The experts for the condemnor testified that the difference in the fair market value before and after the taking was, in the opinion of one of them, $3,900, and in the opinion of the other, $3,500. According to the condemnees' expert witnesses, the difference in market value according to the first expert introduced was $10,000, and according to the second witness, was $12,000. The condemnor admits that the award is within the range of the testimony but argues that the verdict should be held excessive as a matter of law for two reasons.

The first reason so advanced is that the award on a per-acre basis exceeds by almost $500 the per-acre value of any comparable sale used by the experts for either side to support their opinions. The second reason advanced to support condemnor's claim of impermissible excessiveness is that the experts for the condemnees based their appraisals in part on the suitability and adaptability of the subject property for subdivision use. In the words of appellant's brief: "Nowhere in the testimony of all the witnesses for the landowners, including Mr. Diemer himself, is there any showing that there was an expectation or probability that the Diemers were going to subdivide their farm in the near future. Accordingly, the high values which the landowners' experts put on the farm were without proper basis."

■ Addressing ourselves to the first reason urged for reversal, it appears that where there is an appropriation of land for a high tension power line or other wire lines over private property, the owner has the right to be compensated "[not only] for the depreciation in the value of the strip of land over which the wires are suspended and which is subjected to use as a right of way for maintenance of the line, but he is entitled also to compensation for the impairment of the remainder of the tract by reason thereof * * *. In short, the appellees here were entitled to recover such sum as would equal the difference in the market value of their entire property immediately before the taking and after the easement is taken." East Kentucky Rural Electric Coop. Corp. v. Smith, Ky., 310 S.W.2d 535.

The condemnor cites Commonwealth, Dept. of Highways v. Quisenberry, Ky., 402 S.W.2d 427, and Commonwealth, Department of Highways v. Hayes, Ky., 394 S.W.2d 735. In the Hayes case, only the condemnors' expert witnesses used compa-

rable sales, and in the Quisenberry case it was said that "the resulting damages were not great" so that the court regarded the condemnee's expert testimony, wherein the difference in value bore greater disproportion to the per-acre value of the comparable sales used than is here present, to be so lacking in probative value that it could not reasonably support an award based on its accuracy.

◼ In this case, however, both sides used comparable sales as supportive of opinion evidence concerning market value. The condemnees were entitled to be compensated for the difference in the fair market value of the entire property before and after the taking of the easement. "Comparability or noncomparability is a matter to be developed by examination of the expert witness and its lack of probative value, if any, is arguable to the jury." Commonwealth, Department of Highways v. Cain, Ky., 434 S.W.2d 313. Recognizing, as we must, that the landowners here had a right to be compensated not only for the acreage involved in the area of the easement but also for the resulting damages to the remainder of the entire tract as reflected in the diminution in the market value of the entire tract, we are unable to characterize the testimony of the experts called by the condemnees as so incredible and lacking in probative value that an award less than the value fixed by their testimony must be set aside as excessive.

◼ It is apparent that the argument made by the condemnors both in the trial court and on this appeal in support of their second ground for claimed excessiveness is based on a misconception. While it is true that in Commonwealth of Kentucky, Department of Highways v. Stocker, Ky., 423 S.W.2d 510, Paintsville-Prestonsburg Airport Bd. v. Galbraith, Ky., 433 S.W.2d 868, and Commonwealth of Kentucky, Department of Highways v. Wyatt, Ky., 434 S. W.2d 807, we held that the evidence must be sufficient to establish a market potential for subdivision use, those cases did not in any way alter the proposition that if a market potential in the reasonably near future for commercial or residential development be present, the fact that the landowner had never thought of selling or subdividing his property is not relevant. See Commonwealth, Department of Highways v. Rollyson, Ky., 415 S.W.2d 838.

◼ In the Paintsville-Prestonsburg Airport case, the admissibility of evidence concerning the highest and best use of the property for subdivision purposes was sharply in issue at the trial level. In the Rollyson case, it was pointed out that the condemnor had failed at the trial to properly raise for a court ruling the question of the significance or insignificance of the possibility of commercial or residential use as it affected the market value of the property. In the instant case, not only was no issue raised on this basis in the trial court, but as a matter of fact an expert witness for the condemnor testified that the highest and best use of the property was from "farm to subdivision purposes." He used as a comparable sale a tract which had been subdivided and from which lots had been sold and were being sold. Therefore, on the record made at the trial level, we are left with the impression that the only basis urged in this regard was in the motion for a new trial filed by the condemnors. There it was argued that no proof that the landowners intended to subdivide this property in the reasonably near future was shown. We have concluded that the evidence both of the condemnors and the condemnees was such that the jury could have readily determined that the highest and best use of the condemnees' land was for residential sites and if not for its present use as such, then for use in the reasonably immediate future. The second reason relied on by the condemnor to demonstrate such excessiveness as would warrant relief on the appellate level fails.

"Though it is obvious that the jury system shows to its least advantage in condemnation cases, they are better tried in

the court house than here." East Kentucky Rural Electric Cooperative Corp. v. Rand, Ky., 357 S.W.2d 890.

The judgment is affirmed.

HILL, MILLIKEN, OSBORNE, PALMORE, and STEINFELD, JJ., concur.