**COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,**

v.

**J. S. BARTLEY et al., Appellees.**

Court of Appeals of Kentucky.

March 19, 1971.

Rehearing Denied July 2, 1971.

improved by a one and one-half story residence, a garage, three barns, three grain bins, a poultry house and other outbuildings. All of these structures were in good condition and were undisturbed by the taking. The surrounding area was predominantly agricultural.

The Parkway, when constructed, will be limited-access. It runs generally parallel with the southern boundary of the farm and lies between the 96.46-acre tract and that part of the road which formerly abutted the condemnee's land. The 2.13-acre tract is located between a part of the Parkway and the old road. The frontage of the small tract on that road was not substantially disturbed.

The testimony as to the before and after taking values and the verdict were as follows:

| WITNESS | BEFORE | AFTER | DIFFERENCE |
|---|---|---|---|
| "FOR APPELLANT | | | |
| Hoffman | $70,600 | $55,600 | $15,000 |
| McCormick | 71,750 | 56,250 | 15,500 |
| FOR APPELLEES | | | |
| Bartley | 93,600 | 23,975 | 69,635 |
| Hardesty | 88,275 | 48,330 | 39,945 |
| Kuegel | 82,390 | 28,998 | 53,392 |
| Richeson | 89,500 | 29,500 | 60,000 |
| Kurtz | 89,500 | 48,500 | 41,000 |
| VERDICT | | | |
| Jury | $82,390 | $50,990 | $31,400" |

Don Duff, Department of Highways, Frankfort, Rhodes Bratcher, Bratcher, Cooper & Flaherty, Owensboro, Harvey G. Ershig, Madisonville, for appellant.

Charles J. Kamuf, Beard, Rummage & Kamuf, Owensboro, for appellees.

STEINFELD, Judge.

For the construction of Audubon Parkway between Owensboro and Henderson the Commonwealth on January 31, 1969, condemned 19.11 acres of the farm of appellees which is located just off Kentucky 54, nine miles west of Owensboro. This severed the land into two tracts, one of 96.46 acres and the other of 2.13 acres. Pursuant to a jury award of $31,400 judgment was entered from which the Commonwealth appeals. It claims that the verdict is excessive and is unsupported by the evidence. We affirm.

The Curdsville-Delaware Road passed along the entire eastern frontage and the southern frontage of the property. The farm had tobacco and corn bases and was

In addition to its worth for farming the valuation witnesses who testified for the owners said that the land had potential for building lots which they considered in appraising. Relying on Com., Dept. of Highways v. Gearhart, Ky., 383 S.W.2d 922 (1964); Com., Dept. of Highways v. Riley, Ky., 388 S.W.2d 128 (1965) and Com., Dept. of Highways v. Creason, Ky., 402 S.W.2d 426 (1966), the Commonwealth contends that there was no showing of any such potential or of " * * * an expectation or probability in the near future that it can or will be so used", therefore, it argues that the appraisal testimony does not support the verdict.

J. S. Bartley, one of the owners, said that while his land was rich rolling ground it was more suitable for building purposes than for farming. He was asked, "Based upon your investigation is there a market for building lots in the area where your farm is located?" He answered, "Definitely, All you have to do is just open your mouth and somebody will buy it." However, he admitted that he had checked only the sale of one lot in that area. Later he was asked and answered, "Now let me ask you if you have made an investigation of property values for farm land? A. Yes, the Boswell tract sold within two miles, the same distance from the Boswell tract as this Sauer land that was sold for building purposes. It was 52 acres and sold for $37,000—around $703 an acre."

The next witness for the landowner was Andrew Hardesty who was engaged in the real estate and insurance business. He appraised real estate for many organizations and was eminently qualified to express an opinion as to values. He said that the farm " * * * has a frontage development, potential that did enter into some of the value." No attack was made by the Commonwealth on the statement of this witness that the land had "frontage development potential" and he was not cross-examined on that subject.

Another witness for the owner was William Keigel (whose name is spelled in the brief as Kuegel). He was the owner of approximately 1,800 acres of farm land and with his brother farms approximately 3,000 acres in that area. He said that "We buy a farm or so most every year." We consider Mr. Keigel to be qualified by his experience to state the factors which affected the value of farm land in the subject area. He stated that the highest and best use of the Bartley land before the taking was for farming but that the land had " * * * some availability of potential lots". On cross-examination the record reveals the following "Q. You stated that the highest and best use of this farm was for farm and its availability for lots. Mr. Keigel

would you cite to the jury—the lot sales that have been made on the Curdsville Road in the past ten years from the time it goes off 54 until it gets to Curdsville? A. There have been very few sales of lots from Sorgho to this property due to the fact that, in my opinion, that the landowners don't care to sell a lot off his farm. Most any farmer who has property adjoining the highway can sell lots any time he cares to." He admitted that he knew of only one lot sold during the preceding year.

Robert Richeson, a house builder and subdivision developer, testified for the owners. When asked about the highest and best use of the Bartley farm before the taking he said, "Well, we have a large frontage there approximately a mile, what is good building lots and my part of it would be for building, for I am in this business, I would say for future sales of lots." He opined that the highest and best use would be for building lots. On direct examination he was not specifically asked and did not express an opinion as to the present potential for the sale of such lots. He explained that he had bought some lots in Sorgho which is about two miles away and that he had built a lot of houses there. On cross-examination witness Richeson was asked whether the figures he had stated were for his use or the general market value. One of his answers was, "I can sell these lots at certain times and it would be just like having money in the bank, but I think with Mr. Bartley having this frontage here it would be just like having money in the bank as far as I would be concerned." The interrogation showed that there had been very few sales of lots or houses built near the Bartley farm. On redirect examination we find the following: "Q. Mr. Richeson, is there a demand on the market for building lots in the area of the Bartley farm *right now*? A. Yes, there is a demand for building lots anywhere in the county *at this time,* and in Sorgho area we have a lot of calls for acreage, like an acre. There is a lot of people that don't like to build in the sub-

division. They like to have an acre or an area a little larger than a lot." (Emphasis supplied.)

Bill Kurtz, who holds a real estate license, was extensively engaged in the real estate business dealing mainly in farm property. He stated that the highest and best use of the land was for general farming. He was asked whether there was "Any other use that it might have before the taking?" His answer was, "I would say that since the farm is located on the corner of a blacktop road that it would have definite potential for subdividing it and selling off lots, especially along the frontage along the highway because—well, there is a demand for it and you could do it with very little trouble at all." This witness admitted on cross-examination, however, that there had been only a few sales of lots near the Bartley farm. He explained that most of the farmers have not offered their property for sale as lots, saying "They kindly hold back, not sell off the lots because it kindly like an insurance policy they don't sell them until they need to."

█ The witnesses for the Commonwealth testified that there was no present demand for building lots on the Bartley farm. However, we find the testimony of the witnesses for the owner established that there was a present active demand for building lots. In arriving at the value each witness expressed it was proper for him to consider this factor. Com., Dept. of Highways v. Doolin, Ky., 411 S.W.2d 44 (1967); Com., Dept. of Highways v. Siler, Ky., 411 S.W.2d 937 (1967); Com., Dept. of Highways v. Stocker, Ky., 423 S.W.2d 510 (1968) and Com., Dept. of Highways v. Clore, Ky., 438 S.W.2d 498 (1969).

█ We now reach the argument that the verdict is palpably excessive. To sustain that contention the Commonwealth cites Com., Dept. of Highways v. Tabor, Ky., 402 S.W.2d 434 (1966), in which we said, " * * * that the valuations given

by the landowner's witnesses were so patently extravagant, so lacking in justification, so inconsistent with comparable sales, and so infused with the allowance of double damages, as to be without probative value." Also cited is Com., Dept. of Highways v. Arnett, Ky., 390 S.W.2d 187 (1965), in which we ordered the verdict set aside because the jury had " * * * accorded more weight and value to the testimony of the witnesses for the appellees than its maximum probative value warranted; * * *".

In appellant's brief it is written: "Appellees allege damages were two-fold. First, their contention was that before the tract had its highest and best use as farming with potential as building sites, and after the taking the farm had its highest and best use only as farming with the potential for building lots being destroyed. Second, they contended that the tract's use as a farm was substantially impaired because of the loss of the 19 acres frontage on one side and its location now on a deadend road." Appellee's position is, as we see it, that before the taking, in addition to the use of the land for farm purposes, the road frontage had present value for building lots and that this latter value was destroyed by the taking. The present potential use for building lots along more than one mile of roadway was lost, and as we have said above, it was proper for the witnesses to consider this in appraising and it was a factor for the jury to consider in reaching its verdict. They also claim the land lost was their most productive farm land. We see no inconsistency.

The Commonwealth argues that for taking 16% of the tract without disturbing any of the improvements the value, according to the owners' witnesses, was reduced between 58% and 73%, therefore, the testimony was not "credible, believable or probative." Com., Dept. of Highways v. Campbell, Ky., 445 S.W.2d 689 (1969). Many cases are cited in support of this argument, among which are Ballard v. King, Ky., 373 S.W.2d 591 (1963); Com., Dept. of Highways v. Stocker, Ky., 423 S.W.2d 510

(1968); Com., Dept. of Highways v. Lovett, Ky., 427 S.W.2d 576 (1968) and Com., Dept. of Highways v. Deloteus, Ky., 444 S.W.2d 743 (1969). It would serve no useful purpose and would unduly lengthen this opinion for us to discuss those cases. We concluded that the well qualified and knowledgeable appraisal witnesses supplied evidence which sustained the verdict. It does not strike us at first blush that it was given as a result of passion or prejudice, and while we concede that it is substantial we cannot hold that it is grossly excessive or unsupported by the evidence. Com., Dept. of Highways v. Cooper, Ky., 397 S.W.2d 47 S.W.2d 47 (1965).

The judgment is affirmed.

MILLIKEN, C. J., and EDWARD P. HILL, Jr., and PALMORE, JJ., concur.

REED, J., concurs in result only.