LOUISVILLE GAS & ELECTRIC
COMPANY, Appellant,

v.

Leland SCOTT and Hazel Scott, his
wife, Bedford Loan and Deposit
Bank, Appellees.

Court of Appeals of Kentucky.

March 10, 1978.

Thomas F. Manby, Jr., James L. Theiss, LaGrange, for appellant.

William A. Carter, Carrollton, John M. Berry, Jr., Berry & Floyd, New Castle, for appellees, Leland Scott and Hazel Scott.

Bobby K. True, Bedford, for appellee, Bedford Loan and Deposit Bank.

Before GANT, HOGGE and WILHOIT, JJ.

GANT, Judge.

Appellant, Louisville Gas & Electric Company, had a preexisting easement of 150 feet across the 118-acre farm of the appellees. On this easement they had constructed a power line consisting of six H poles which were 15 feet 6 inches apart on center, 60 feet high, carrying 138,000 volt lines. This action was brought to acquire an additional 60-foot easement immediately adjacent to the 150-foot easement, making a total width of 210 feet. At the time of the trial, the new power line had been constructed consisting of five H poles, 27 feet apart on center, one pole 70 feet high, two poles 75 feet high and two poles 80 feet above the ground. The new lines carried 345,000 volts. The amount of acreage involved was 4.56 acres and all witnesses agreed that the use of the land was for "general purpose farming." No structures, fences, roadways or improvements were materially affected, the only evidence being that the power line was moved some 75 feet closer to the dwelling house. The jury awarded the appellees $20,000 for this additional easement.

Appellant first complains that the verdict of the jury was so excessive that it appears at first blush to have been reached as the result of passion and prejudice or in disregard of the evidence. CR 59.01(4). With this we must agree.

The law is so well established in Kentucky that it barely needs repeating but it is well set out in the case of *Louisville Gas & Electric Company v. Diemer,* Ky., 443 S.W.2d 647, 648 (1969) in which the court states:

[I]t appears that where there is an appropriation of land for a high tension power line or other wire lines over private property the owner has the right to be compensated "[not only] for the depreciation and the value of the strip of land over which the wires are suspended and which is subjected to use as a right of way for maintenance of the line, but he is entitled to compensation for the impairment of the remainder of the tract by reason thereof * * *. In short, the appellees here were entitled to recover such sum as would equal the difference in the market value of their entire property immediately before the taking and after the easement is taken." *East Kentucky Rural Co-op Corp. v. Smith,* Ky., 310 S.W.2d 535.

The law is quite clear in Kentucky that it is not patently erroneous for a jury to award more per acre for easements taken for electric transmission lines across farms than the per acre value of the land in fee simple. *East Kentucky Rural Electric Co-op Corp. v. Story,* Ky., 413 S.W.2d 348 (1967). However, it is equally clear from the same case that when this occurs the court will carefully scrutinize the verdict as it relates to the question of excessiveness.

This Court has found few cases relating to an even greater problem, that being the widening of an existing easement. The trial court must be extremely careful to allow recovery only for the difference in fair market value of the land subject to an existing easement immediately before and immediately after subjecting it to the additional easement. See *Nantahala Power &*

*Light Co. v. Sloan,* 227 N.C. 151, 41 S.E.2d 361 (1947). All damages which may be traced to the existing easement must be eliminated, as the condemnor should pay only once for that easement. Thus, where the award to the condemnee exceeds the per acre value of the land in fee simple, there must be clear proof that the impairment of the remainder of the tract is occasioned by the *additional* easement and not the existing one.

The facts in this case simply do not meet this test. The taking herein was an easement across 4.56 acres. As was pointed out, the condemnee had a farm of 118 acres subject to an easement when he started and a farm of 118 acres subject to an easement when he finished. The proof clearly showed that no structures, fences, roadways or improvements were affected. The condemnor, in acquiring the right of way across the additional land, acquired few, if any rights that he did not already have with respect to the entire tract. He already had the right to construct his lines and the right of entry to maintain these lines. As a matter of fact, the evidence indicated that the primary purpose of the additional easement was to permit the condemnor to maintain service on the old line while constructing the new one, the old line being removed after the new one was constructed. The danger, if any, already existed and it would be of little consequence if contact was made with a 138 KV line or a 345 KV line—either would be fatal. There was testimony herein that the new line would sizzle during humid weather but that the sizzle could not be heard at the residence. The old line would also sizzle and the difference in degree would have little compensable value. The inconvenience in plowing would be affected slightly if at all. The evidence discloses that there were two less poles (one less H pole), that they were farther apart, and that the lines were higher above the surface.

There was evidence of additional damages by virtue of widening the easement, such as the fact that the fences would have to be grounded because of the additional power and that the additional width would permit future construction of either additional lines or larger lines, although the evidence was that there were no plans to do so within any foreseeable future. However, there was no evidence of a nature that would justify the verdict herein.

The evidence relating to comparable sales in the vicinity fixed the value of land when sold in fee simple at from approximately $500 an acre to approximately $1,900 per acre. There was testimony concerning one tract which was sold under threat of condemnation, which evidence was incompetent and should not be admitted on retrial of this case. The bulk of the evidence indicated that land in the vicinity used for general farming purposes had a value of somewhere between $1,000 and $1,200 per acre. To permit the condemnee to recover approximately four times the fee simple value of this 4.56 acres under the circumstances of this case is patently erroneous.

Appellant raises two other questions in his argument. The first is that the appellees sought to imply by cross-examination that the experts utilized by the appellant had testified to approximately the same difference in fair market value in this case as in other cases. This is improper cross-examination and should not be permitted on a retrial of this case.

Appellant further urges that it was error for the experts for the appellees to consider the existing easement in fixing their value on the land before the taking. We are unable to understand why appellant would insist upon such a point. As stated above, the value of the farm subject to the existing easement is not only permissible but mandatory in determining the difference in fair market value when an additional easement is being requested.

For the reasons above stated, this case is reversed and remanded to the lower court with instructions to set aside the verdict herein and to grant a new trial consistent with this opinion.

All concur.